Sterling Ballard Jr. v. State of Texas
















IN THE
TENTH COURT OF APPEALS
 

No. 10-99-070-CR

     STERLING BALLARD, JR.,
                                                                         Appellant
     v.

     THE STATE OF TEXAS,
                                                                         Appellee
 

From the 13th District Court
Navarro County, Texas
Trial Court # 27,090
                                                                                                                
                                                                                                            
O P I N I O N
                                                                                                                
   
      The court convicted Sterling Ballard, Jr. in a bench trial of delivery of less than one gram
of cocaine and sentenced him to twenty months in a state jail. See Tex. Health & Safety
Code Ann. § 481.112(b) (Vernon Supp. 2000). Ballard contends in a single point that the
court erred in admitting a videotape in evidence which was not properly authenticated.
      A confidential informant testified at Ballard’s trial that he participated in an undercover
operation to purchase narcotics from suspected dealers at various locations in Navarro County. 
On August 25, 1998, he met some officers to undertake one of these purchases. Corsicana
Police Detective Charles Fincher searched him before sheriff’s deputy Elmer Tanner
transported him to a location in Corsicana. The officers placed a video camera made to appear
like a pager on the informant’s overalls to record the transaction. Tanner activated the camera
when he let the informant out of his pickup. The informant met Ballard in a shop and
purchased $30 worth of cocaine from him. The informant later met Tanner and gave the
narcotics to him. Tanner turned off the video camera and took it from him. They later met
Fincher who again searched the informant.
      At this point in the testimony, the prosecutor approached the informant with a VHS video
recording marked as State’s Exhibit No. 1. The informant testified that he had reviewed this
recording earlier on the day of trial and it accurately depicts the events surrounding his
purchase of the cocaine from Ballard. He confirmed that the recording equipment was
working properly on the date in question and that, “to [his] knowledge,” the recording had not
been altered in any manner.
      On voir dire examination by Ballard’s counsel, the informant agreed that this recording is
a duplicate of the much smaller original recording. He was not present when the duplicate was
made and did not maintain custody of the duplicate after it was made. He is not an expert
specialized in the field of video and audio recording. 
      The prosecutor explained that the duplicate was made to fit the court’s video player and
requested a continuance until the afternoon to obtain the original recording and equipment with
which to play it. The court expressed reluctance to postpone the trial and asked whether
Ballard even had an objection. Counsel responded:
The objection we would have, your Honor, at this point in time we would object
to the introduction of it on the basis that the tape has not been in Mr. McDade’s
possession. He does not have the expertise to say whether or not the tape may or may
not have been altered at this time. So we would object to it on that basis. It is not the
original that was with him at that time, it is a copy made by, we will admit to the
State’s statement that it was made from a micro onto this for viewing purposes for
convenience of the Court.
 
We will stipulate that that was the process done, but this particular witness I don’t
think has the ability to introduce this tape into evidence at this time.

The court overruled the objection stating, “I’m going to find the objection goes to the weight
and not admissibility at this time. But I will reserve my right to change my mind.”
      The prosecutor then played the video recording for the court. The informant described
what was happening as the recording played. He identified the persons depicted in the video
except for one man whom he could not name. The audio recording is so poor that most of the
conversations recorded are either inaudible or unintelligible. After the exhibit was played, the
informant again testified that the recording accurately portrays the transaction depicted and that
there are no alterations or additions to it.
      Deputy Tanner confirmed much of the informant’s testimony. He testified that the
recording equipment was in good working condition on the date in question. He activated the
recording device when the informant got out of his pickup and turned it off when he returned. 
At the conclusion of Tanner’s testimony, the trial court asked him whether he questioned the
authenticity of the recording. He responded, “No question. I actually saw the original before
it was ever made into a copy.” Ballard’s counsel concluded by asking whether there is “any
deviation, alteration, whatsoever” between the duplicate and the original. Tanner replied,
“Not to my knowledge.”
      Detective Fincher similarly confirmed much of the informant’s testimony. He explained
that the original recording is on an eight-millimeter tape. Fincher copied the original recording
on the same afternoon he retrieved it from the informant. He then placed the original in the
evidence locker and secured the duplicate under lock and key in his office. Only one other
detective had access to the recordings. Fincher testified that the duplicate offered in evidence
is “a true and accurate copy of all of the contents on the original tape.”
      Ballard argues in his sole point that the court erred in admitting the duplicate video
recording because it was not properly authenticated. Under this point he asserts that the
original recording should have been required because: (1) the authenticity of the duplicate was
questioned; (2) the original was easily obtainable by the State; and (3) the State failed to
establish a proper chain of custody for the duplicate.
      The State first responds that Ballard has failed to preserve all but the chain of custody
complaint because he did not raise the other objections at trial. We disagree. Ballard’s
objection questioned whether the duplicate had been altered. This objection challenged the
accuracy of the duplicate and thus its authenticity. See Angleton v. State, 971 S.W.2d 65, 67
(Tex. Crim. App. 1998). The objection complained about the State’s use of a duplicate
recording. Thus, we deem it adequate to include Ballard’s argument on appeal that the
duplicate should have been excluded because the original was available. See Tex. R. App. P.
38.1(e).
      Article X of the Rules of Evidence codifies “what was the common law ‘best evidence’
rule.” Englund v. State, 946 S.W.2d 64, 67 (Tex. Crim. App. 1997). Rule 1002 states the
general proposition that the original of a recording is required to prove its contents unless
otherwise provided. See Tex. R. Evid. 1002; see also Englund, 946 S.W.2d at 67. Rules
1003 and 1004 provide exceptions to the general rule. See Hood v. State, 944 S.W.2d 743,
747 (Tex. App.—Amarillo 1997, no pet.); 6 Jack B. Weinstein & Margaret A. Berger,
Weinstein’s Federal Evidence § 1002.04[3] & nn. 8-14 (Joseph M. McLaughlin, ed., 2d
ed. Mar. 1997).


 The exceptions operate independently of each other. Thus, if the proponent
of a duplicate recording can establish that the proffered evidence fits within either exception,
the duplicate will be admissible notwithstanding the general rule.
      Rule 1003 provides in pertinent part that a “duplicate is admissible to the same extent as
an original unless . . . a question is raised as to the authenticity of the original.” Tex. R.
Evid. 1003 (emphasis added); see also Williams v. State, 778 S.W.2d 155, 156 (Tex.
App.—Texarkana 1989, no pet.). Ballard did not challenge the authenticity of the original
eight-millimeter recording at trial and does not on appeal. The informant, Tanner, and Fincher
all testified that the duplicate was accurate. Therefore, because Ballard did not question the
authenticity of the original recording, the duplicate recording offered in evidence is admissible
under Rule 1003. Id.
      Because the recording is admissible under the Rule 1003 exception to the best evidence
rule, the State did not need to establish its admissibility under Rule 1004.
      Ballard also contends that the exhibit was not properly authenticated. Before adoption of
the Rules of Criminal Evidence in 1986, Texas courts subscribed to the so-called “Edwards
test” to determine whether videotapes with “a simultaneous audio and visual recording” were
properly authenticated. Roy v. State, 608 S.W.2d 645, 649 (Tex. Crim. App. [Panel Op.]
1980) (citing Edwards v. State, 551 S.W.2d 731, 733 (Tex. Crim. App. 1977)). Rule of
Evidence 901 now provides the general rule for authentication of evidence. See Tex. R. Evid.
901. At first, the Court of Criminal Appeals determined that “Rule 901 is consistent with
[Edwards and its progeny].” Kephart v. State, 875 S.W.2d 319, 322 (Tex. Crim. App. 1994)
(per curiam). More recently however, the Court has expressly overruled Kephart for the
following reasons:
Kephart suggested that Rule 901 was consistent with the pre-rules authentication
requirements. We hold that suggestion to be in error. While the Edwards test and
other pre-rules caselaw may often yield the same results and may sometimes employ
similar reasoning to that required under Rule 901, that is not invariably the case. 
And, we find that attempting to cling to the Edwards test after the enactment of Rule
901 will result in unwarranted confusion for practitioners, trial courts, and appellate
courts. Rule 901 is straightforward, containing clear language and understandable
illustrations. Kephart is overruled.

Angleton, 971 S.W.2d at 69. Accordingly, we look to Rule 901 to determine whether the
duplicate video in Ballard’s case was properly authenticated.
      Subsections (1), (4), and (5) of Rule 901(b) provide pertinent illustrations for
authentication of a video-audio recording. See Crivello v. State, 4 S.W.3d 792, 802 (Tex.
App.—Texarkana 1999, no pet. h.); Thornton v. State, 994 S.W.2d 845, 855 (Tex.
App.—Fort Worth 1999, pet. ref’d); see also Angleton, 971 S.W.2d at 67 (discussing
authentication of audio recording). These subsections provide the following methods for
authentication:
(1) Testimony of Witness with Knowledge. Testimony that a matter is what it is
claimed to be;
 
(4) Distinctive Characteristics and the Like. Appearance, contents, substance, internal
patterns, or other distinctive characteristics, taken in conjunction with circumstances;
and
 
(5) Voice Identification. Identification of a voice, whether heard firsthand or through
mechanical or electronic transmission or recording, by opinion based upon hearing the
voice at any time under circumstances connecting it with the alleged speaker.

Tex. R. Evid. 901(b)(1), (4), (5). We now apply these provisions to Ballard’s case.
      The informant reviewed the duplicate recording on the date of trial and concluded that it is
an accurate depiction of what occurred and has not been altered in any manner. Tanner and
Fincher both testified that the duplicate is accurate and has not been altered in any manner. 
Fincher made the duplicate on the same day the original was recorded and maintained custody
of it until trial. The video itself depicts a continuous, uninterrupted occurrence from the time
the informant left Tanner’s pickup until he returned. The testimony of the informant, Tanner,
and Fincher all combine to corroborate these authenticating factors. Finally, the informant
testified that he talked with Ballard and purchased the cocaine from him, and the trial court (as
the trier of fact) could compare the recorded conversation and the physical appearance of the
person purported to be Ballard on video with Ballard himself and his courtroom testimony. 
For each of these reasons, we conclude that the recording was properly authenticated. See
Crivello, 4 S.W.3d at 802; Thornton, 994 S.W.2d at 855.
      Ballard concludes by averring that the State failed to establish a proper chain of custody
for the video exhibit. Under the present rules, a chain of custody must be established to
authenticate an exhibit:
when there [is] a possibility of commingling the item with items similar in
appearance, when items not having distinctive characteristics [have] not been marked
with distinctive markings by the sponsoring witness, and when necessary to refute a
suggestion that the evidence [has] been tampered with or changed in some manner.

Moore v. State, 821 S.W.2d 429, 431 (Tex. App.—Waco 1991, no pet.) (quoted in 2 Steven
Goode et al., Texas Practice: Guide to the Texas Rules of Evidence: Civil and
Criminal § 901.3 n.2 (2d ed. 1993)). Ballard suggested at trial that the exhibit was possibly
tampered with. Assuming without deciding that this suggestion of tampering raised the issue,
we will examine the chain of custody shown by the State. See id.
      Detective Fincher testified that he took custody of the original, eight-millimeter videotape
upon removing the recording device from the informant. He returned to his office and prepared
the duplicate recording offered in evidence that same day. Fincher secured the original in the
evidence locker and the duplicate in his office until trial. Only one other detective had access
to the duplicate recording in Fincher’s office. The informant, Tanner, and Fincher all testified
that the duplicate had not been altered in any respect. Ballard offered no affirmative evidence
that the duplicate had been tampered with. Accordingly, we conclude that the State established
a proper chain of custody for the exhibit. See Lagrone v. State, 942 S.W.2d 602, 617 (Tex.
Crim. App. 1997).
      For each of the reasons stated, we overrule Ballard’s sole point of error. We affirm the
judgment.
 
                                                                   REX D. DAVIS
                                                                   Chief Justice

Before Chief Justice Davis
            Justice Vance and
            Justice Gray
Affirmed
Opinion delivered and filed June 21, 2000
Publish