**Chester ENNIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–00–00098–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted Oct. 18, 2001.
Decided Feb. 15, 2002.

---

4. M. Frances McNamara, 2,000 Famous Legal Quotations 71–72 (1967).

Tracy Davenport, State Counsel for Offenders, Huntsville, for appellant.

Nicole Habersang, Asst. Dist. Atty., Texarkana, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

DONALD R. ROSS, Justice.

Chester Ennis appeals his conviction by a jury for possession of a deadly weapon in a penal institution. The jury assessed Ennis' punishment at ninety-nine years' imprisonment. On appeal, Ennis contends the trial court erred in admitting into evidence two weapons and testimony about them. He also contends there is legally insufficient evidence to convict him and he was not afforded due process of law.

Carl Brewer, a correctional officer with the Texas Department of Criminal Justice (TDCJ), testified he was escorting inmates to the showers on the day the events at issue occurred. He approached Ennis' cell, strip-searched him, allowed him to redress, and told him to put his hands out the food tray slot of his cell door so he could be handcuffed. Brewer testified Ennis reached his hands through the food tray slot and "started jigging at me with two unknown weapons." Ricky Judd, another correctional officer who was standing near Brewer, testified Ennis stabbed at Brewer through the food tray slot with two homemade weapons. However, Jimmy Underwood, who occupied the cell next to Ennis and who testified for the defense, stated he viewed everything through an opening in his cell door and never saw a weapon in Ennis' hands.

Brewer testified he jumped back from Ennis' cell and swung his riot baton, hitting the food tray slot. William Jones, a correctional officer who was positioned in the picket area (the secure area controlling the opening and closing of cell doors) a short distance from Ennis' cell, testified he saw Ennis moving his hands through the food tray slot and saw Brewer jump away from the cell door. Ennis backed into his cell, and Brewer closed the food tray slot. Brewer testified he saw Ennis place the weapons in his commode and flush repeatedly; Judd testified he saw Ennis flush the commode.

Brewer later identified two sharpened mirrors as resembling the weapons Ennis had. Judd identified the two sharpened mirrors as "the same kind of material" he saw in Ennis' hands. There was testimony from several officers these sharpened mirrors were capable of causing death or serious bodily injury.

Brewer testified he witnessed prison maintenance personnel, not an inmate plumber, remove the two weapons from the pipe chase, which was located outside Ennis' cell. Jones testified he saw the weapons retrieved from the commode inside Ennis' cell. John Compton, the assistant maintenance supervisor at the prison, testified he supervised as an inmate plumber removed the weapons from the pipe chase. Jeffrey Cato, a lieutenant at the prison, testified he witnessed Davey Rochelle, an inmate plumber, remove the weapons from the pipe chase and hand him the weapons, which he received in a towel. Rochelle, who testified for the defense, stated he did not find anything lodged on the catch pin of the pipe chase, but when he removed the catch pin, an officer got a flashlight, looked in the pipe, and removed the weapons.

Compton testified it would have been impossible for material from another cell to get into the plumbing from Ennis' cell. Rochelle testified the objects could have

come from any of the nearby cells, based on where he testified the officers found them.

■ Ennis first contends the trial court erred in admitting the weapons into evidence because the State failed to establish a proper chain of custody. As a predicate to admissibility, Texas Rule of Evidence 901(a) requires a party who offers an item into evidence to establish, to the trial court's satisfaction, the item is what the party represents it to be. TEX.R. EVID. 901(a); *Avila v. State*, 18 S.W.3d 736, 739 (Tex.App.-San Antonio 2000, no pet.). A chain of custody must be established when (1) there is a possibility of commingling the item with items similar in appearance, (2) the sponsoring witness has not marked with distinctive markings an item not having distinctive characteristics, or (3) there is a suggestion the evidence has been tampered with or changed in some manner. *Ballard v. State*, 23 S.W.3d 178, 183 (Tex. App.-Waco 2000, no pet.).

■ The chain of custody is conclusively established if an officer testifies he or she seized the item of physical evidence, tagged it, placed an identifying mark on it, placed it in evidence storage, and retrieved the item for trial. *Lagrone v. State*, 942 S.W.2d 602, 617 (Tex.Crim.App.1997); *Avila*, 18 S.W.3d at 739. However, proof of chain of custody goes to the weight rather than the admissibility of the evidence. *Kingsbury v. State*, 14 S.W.3d 405, 407 (Tex.App.-Waco 2000, no pet.). Absent evidence of tampering or commingling, theoretical breaches in the chain of custody do not affect the admissibility of evidence. *Id.*

Ennis points to the following purported deficiencies in the State's evidence regarding the weapons: (1) Brewer's testimony he did not know what the weapons were at the time of the assault; (2) conflicting evidence regarding whether Brewer was present when the weapons were removed from the pipe chase; (3) Cato's inconsistent testimony on direct examination and cross-examination regarding the envelope in which he sealed the weapons; and (4) Cato's purported failure to account for the discrepancy in time between the seizure of the weapons and the sealing of the weapons in the envelope.

■ The trial court's ruling on the admission of evidence will not be overturned absent a clear abuse of discretion. *Green v. State*, 934 S.W.2d 92, 101–02 (Tex.Crim.App.1996). The sufficiency of the predicate is also within the sound discretion of the trial court. *Davis v. State*, 992 S.W.2d 8, 11 (Tex.App.-Houston [1st Dist.] 1996, no pet.). A reviewing court should not reverse a trial court's ruling on the admissibility of evidence that is within the "zone of reasonable disagreement." *Green*, 934 S.W.2d at 102.

■ Reviewing the evidence, we detect no abuse of discretion. It is true Brewer could not identify the weapons introduced at trial as the actual weapons he saw in Ennis' hands. In fact, he testified he did not know what the weapons were at the time of the assault. However, he later testified the weapons introduced at trial "resemble[d] what ... Ennis had in his hands that day." Further, he testified he saw Ennis place the weapons in the commode in his cell. In addition, Judd testified he saw Ennis stab at Brewer with two homemade weapons and identified the two sharpened mirrors as "the same kind of material" he saw in Ennis' hands.

Cato, Brewer, and Compton each testified the weapons were removed from the pipe chase outside Ennis' cell. Though Ennis contends Cato testified Brewer was not present when the weapons were recovered, at best his testimony was he could not remember whether Brewer was there.

Though Jones, the officer stationed in the picket area, testified he saw the weapons removed from the commode in Ennis' cell, the trial court was entitled to give greater weight to the testimony of other witnesses for the purpose of determining admissibility.

Cato and Compton testified it was Rochelle, the inmate plumber, who removed the weapons from the pipe chase. Brewer testified it was a maintenance person, not an inmate plumber. Rochelle testified it was a correctional officer. These inconsistencies do not undermine the central inference that the weapons were removed from the pipe chase and turned over to Cato.

Cato testified he sealed the weapons in an envelope and sent them to Todd Warren, an investigator with the internal affairs office at the prison. Though Ennis contends Cato failed to account for the discrepancy in time between when he seized the weapons and when he sealed them in the envelope, a review of the testimony shows neither Ennis nor the State asked him how long it took him after he seized the weapons to seal them in the envelope. In any event, Warren testified the weapons were still wet when he received them, indicating both that Cato sent the weapons to him soon after he seized them and that the weapons were the same ones discovered in the pipe chase.

Though in his testimony on direct examination Cato identified an envelope as the one in which he sealed the weapons, on cross-examination he corrected himself and stated it was not the same envelope. However, Warren testified that, after receiving the weapons, he sealed them in an evidence envelope and marked the envelope with the relevant details of the case. He identified the markings on the envelope as his own.

In sum, the purported deficiencies in the State's evidence regarding chain of custo-dy amount to nothing more than theoretical gaps that, as mentioned previously, do not affect admissibility in the absence of evidence of tampering or commingling. Ennis contends, however, there is affirmative evidence of commingling in this case.

The basis for his contention is testimony elicited in a pretrial hearing. Ennis was found to be in possession of weapons on at least two occasions. The first, which was the subject of the indictment in the present case, occurred on May 14, 1999; the second occurred three days later on May 17, 1999. Both offenses involved sharpened mirrors.

Warren testified he opened a single case file covering both offenses. From this fact, and from some apparent difficulty Ennis had in obtaining reports related solely to the May 14 incident, Ennis speculates the weapons associated with each offense were commingled. However, Warren's testimony refutes Ennis' theory.

Warren testified that, after the May 14 incident, he collected the evidence and placed it in the property room, but went home for the weekend before beginning the paperwork. When he returned on May 17, he had a report on the May 17 incident. Because both offenses were similar, he chose to open a single case file. However, he testified he maintained the weapons seized after each incident in separate envelopes, each marked with the relevant details of the respective case. Therefore, Warren's testimony provides a basis on which the trial court could have concluded the weapons from the May 14 and May 17 incidents were not commingled. We overrule Ennis' first issue on appeal.

■ In his second issue on appeal, Ennis challenges the legal sufficiency of the evidence. In reviewing the legal sufficiency of the evidence, we look to see whether, after viewing all of the evidence in the

light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560, 573 (1979); *Lane v. State*, 933 S.W.2d 504, 507 (Tex.Crim.App.1996). We evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible. *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim.App.1993).

■ To support a conviction for possession of a deadly weapon in a penal institution, the State must show (1) that the accused exercised actual care, control, or custody of the weapon, (2) that the accused was conscious of his or her connection with it, and (3) that the accused possessed the weapon knowingly or intentionally. *See Brown v. State*, 911 S.W.2d 744, 747 (Tex.Crim.App.1995); *Nguyen v. State*, 54 S.W.3d 49, 52–53 (Tex.App.-Texarkana 2001, pet. ref'd). The evidence used to satisfy these elements can be direct or circumstantial. *See Brown*, 911 S.W.2d at 747; *Nguyen*, 54 S.W.3d at 53. Whether direct or circumstantial evidence is used, the State must establish that the accused's connection with the weapon was more than just fortuitous. *See Brown*, 911 S.W.2d at 747; *Nguyen*, 54 S.W.3d at 53.

■ However, when the weapon is not found on the accused's person or is not in the accused's exclusive possession, additional facts must affirmatively link the accused to the weapon. *See Nguyen*, 54 S.W.3d at 53. The affirmative links ordinarily emerge from an orchestration of several factors and the logical force they have in combination. *Id.* Factors that may establish affirmative links include: (1) whether the accused was present when the weapon was found; (2) the proximity of the accused to the weapon; (3) whether the weapon was in a place the accused

controlled, had a right to possess, or to which he or she had access; (4) whether the weapon was in plain view; (5) whether the weapon was found in an enclosed space; (6) whether the accused's conduct indicated a consciousness of guilt; and (7) whether affirmative statements connect the accused to the weapon. *See id.*

■ We conclude there is sufficient evidence linking Ennis to the weapons. Brewer and Judd testified the weapons produced at trial resembled the weapons they saw in Ennis' hands. Both officers testified they saw Ennis flushing his commode immediately after pulling his hands back into his cell. Cato and Compton testified they watched Rochelle remove the weapons from the pipe chase outside Ennis' cell. Compton testified it would have been impossible for material from another cell to get into the plumbing from Ennis' cell.

Ennis contends the evidence is insufficient to show he had a weapon at all. He observes Brewer testified he did not know what the weapons were at the time of the assault. Underwood testified Ennis did not have a knife. Ennis also contends it is not reasonable to conclude he could have so quickly pulled his hands back through the small opening of the food tray slot when Brewer swung at him with his riot baton.

Though Brewer could not identify the weapons introduced at trial as the weapons he saw in Ennis' hands, he testified they resembled what he saw. He also testified he saw Ennis place the weapons in his commode. In addition, Judd testified the weapons admitted into evidence were "the same kind of material" he saw in Ennis' hands. Though Ennis contends it would have been impossible for him to quickly pull his hands back through the food tray slot, Brewer and Judd never testified he

did. Rather, they testified Brewer swung at and hit the food tray slot. In fact, when asked why Brewer did not hit Ennis, Judd responded, "Evidently, he didn't aim for him."

Ennis also contends it is not reasonable to conclude that objects the size of the weapons introduced into evidence could be flushed down the commode and survive intact. He also points to conflicting evidence regarding whether the weapons could have originated from one of the surrounding cells.

However, the jury saw the weapons and drew the inference the weapons could be flushed down the commode. That inference is supported by the fact the weapons were found in the plumbing. Even if, as Ennis contends and Rochelle testified, the weapons could have come from a surrounding cell, it is clear they must have been flushed down a commode in one of the cells. However, Compton contradicted Rochelle's testimony when he testified it would have been impossible for material from a surrounding cell to get into the plumbing from Ennis' cell. The jury was entitled to give greater weight to Compton's testimony. We overrule Ennis' second issue on appeal.

In his third issue on appeal, Ennis contends we should reverse the trial court's judgment because his due process rights were violated. The basis for his contention is the State's failure to comply with the TDCJ's administrative directives regarding evidence handling and crime scene protection. He contends that, in violation of the TDCJ's policy, (1) Cato removed the weapons from the scene without first notifying internal affairs and without taking photographs or making a videotape of the weapons' removal; (2) Cato did not mark or tag the weapons after seizing them; (3) the correctional officers involved did not immediately create written reports, but

waited almost two months after the incident; and (4) Warren did not preserve the crime scene surrounding Ennis' cell and conduct an adequate follow-up investigation.

■■■■■ Ennis has failed to direct this Court to any place in the record where he raised his due process objection. Before trial, he raised a motion to suppress based on "the co-mingling [sic] of evidence and facts in the preparation of the investigation of this case." He went on to explain his concern that it would be impossible to keep information about the May 17 incident from the jury. The trial court overruled the motion as untimely, but stated that if the motion had been timely, it would have been overruled. At trial, Ennis objected to the admission of the weapons based only on the State's failure to maintain a proper chain of custody and not on a violation of his due process rights. Even constitutional errors may be waived by the failure to object at trial. *Briggs v. State*, 789 S.W.2d 918, 924 (Tex.Crim.App. 1990).

Further, Ennis' contention is improperly briefed. *See* Tex.R.App. P. 38.1(h). He has failed to direct this Court to any authority demonstrating how he has a due process interest in the TDCJ's compliance with its administrative regulations. He has also failed to demonstrate how he was prejudiced by the TDCJ's failure to comply with these guidelines.

■■■■ Ennis also contends the State either failed to comply with his discovery requests or fabricated evidence to enhance the prosecution. The basis for Ennis' contention is the State's delay, in response to his requests, in revealing reports related to the May 14 incident. This contention is also improperly briefed because Ennis fails to cite this Court to any authority showing the legal standard governing the issue. In

any event, it is worth noting that, several times in the record, the State indicated it gave Ennis a complete copy of everything in its files. Further, the trial court held a pretrial hearing where it was revealed the May 14 and May 17 incidents were combined under a single case number. Therefore, any purported delay in providing Ennis with reports related to the May 14 incident was shown to be, at best, inadvertent.

The judgment is affirmed.

WILLIAM J. CORNELIUS, Chief Justice, concurring.

It is not necessary to prove a chain of custody unless the contraband in question is fungible so it can lose its identity if it is commingled with another fungible substance. In this case, the contraband consisted of two sharp weapons. There is direct testimony that the two weapons recovered and introduced in evidence were similar to the weapons the witnesses saw in Ennis' hands. That is sufficient identification without further proof of chain of custody.

Moreover, as noted in the majority opinion, proof of affirmative links connecting an accused to the contraband is necessary only when the contraband is not found in the accused's actual, physical possession. Here there is direct evidence that Ennis had the weapons in his hands, so proof of additional affirmative links was unnecessary.

For these additional reasons, I concur in the judgment.