**Affirmed and Memorandum Opinion filed August 14, 2012.**



**In The**

# Fourteenth Court of Appeals

### NO. 14-10-01169-CR

**RICHARD LAREDO, JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 232nd District Court
Harris County, Texas
Trial Court Cause No. 1282562**

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant, Richard Laredo, Jr., of possession of a prohibited item in a correctional facility. In three issues, appellant contends the evidence is legally insufficient to support his conviction. We affirm.

### I. BACKGROUND

During early March 2010, appellant was an inmate at a Harris County correctional facility. Appellant was housed on the sixth floor of the facility. There were six separate jail cells on each side of the floor. Each cell was secured by a door which could be

locked. There were four sets of bunk beds per cell; appellant's bed was the lower bunk closest to the door. Each side of the floor had a separate common area with six tables. In between the sides was a "control center" where detention officers were stationed.

On March 5, 2010, Officer Grizzle observed the followed events. Appellant was heating water in the common area when two other inmates (the "attacking inmates") confronted him because they were agitated he was using the water heater. After the altercation, appellant returned to his cell and paced back and forth. The attacking inmates sat at one of the tables in the common area and played dominoes; adjacent to the table was a large pillar. Appellant exited his cell and walked behind the pillar. Officer Grizzle was unable to observe what occurred behind the pillar. However, after five seconds, he saw appellant run back into his cell. The attacking inmates followed appellant and began punching him. Officer Grizzle did not see appellant or the attacking inmates use a weapon.

During the altercation, there were approximately fifty-four other inmates on the floor. Officer Grizzle ordered all inmates to return to their cells. The inmates—including appellant and the attacking inmates—complied. Officer Grizzle entered the cell block area. He noticed that neither of the attacking inmates appeared injured, but appellant sustained a "busted lip" and swollen cheek. Officer Grizzle asked Officer Haney to remove the attacking inmates and question them regarding the incident. Officer Grizzle testified that one of the attacking inmates, named Tompkins, stated "[appellant] came at them with a shank."[1] Officer Haney placed Tompkins back in his cell, but Tompkins ran out and resumed fighting with appellant.

After officers re-established control of the situation, Officer West strip-searched appellant. Officer West discovered a pouch sewn into the waistband of appellant's county-issued pants. In the pouch, officers found "pens, razor blade, a complete razor, a loose blade, a modified ink pen with a needle attached to it, [and] loose pills." Twice a

---

[1] Appellant did not object to this hearsay testimony.

2

week, inmates were provided disposable razors which they were required to return after shaving; outside these two time periods, inmates were not allowed to possess razors. Inmates were also known to use pens to make tattooing instruments, similar to the modified pen recovered from appellant. Inmates were not allowed to possess tattooing instruments.

Later that evening, Officer Lipsanen arrived at the correctional facility. A supervising sergeant informed Officer Lipsanen that an inmate was rumored to possess a shank and ordered Officer Lipsanen to search the cell block. Officer Lipsanen first searched a trash can removed from the common area in appellant's cell block; the supervising sergeant told Officer Lipsanen there might be contraband in the trash can. After removing the trash bag, Officer Lipsanen discovered a "2 or 3" inch piece of metal with a sharpened point attached to a toothbrush.

Officer Lipsanen then entered appellant's cell block and ordered all inmates to return to their cells. Appellant had been moved to a separate holding tank, but seven or eight other inmates were present in appellant's cell during the search. Officer Lipsanen asked the inmates where appellant's belongings were located. The inmates directed him to appellant's bunk. Officer Lipsanen then inquired whether anyone had "mess[ed]" with appellant's belongings. The inmates responded "no."

Officer Lipsanen opened appellant's mattress but did not find any weapons. He then searched a "commissary bag" found under appellant's bed. The correctional facility issued each inmate a large, transparent bag in which to store his belongings. The bags did not lock but were secured with Velcro. Inside the bag, Officer Lipsanen found a piece of mail with appellant's name. He also found two wrist braces which each contained a metal bar used to support a person's wrist. Officer Lipsanen removed the bars and observed that they had been sharpened to a point and were capable of being used to cut and stab.

Appellant was indicted for "unlawfully, intentionally or knowingly possess[ing] a deadly weapon, to wit: a knife or razorblade, in a correctional facility." A jury found

3

appellant guilty. Pursuant to an agreement between appellant and the State, the trial court sentenced appellant to thirty years' confinement.

## II. LEGAL SUFFICIENCY

In his first and second issues, appellant contends the evidence is legally insufficient to support a finding that any item found on appellant's person or in his cell block was a deadly weapon or a knife. In his third issue, appellant contends the evidence is legally insufficient to support a finding that he possessed a deadly weapon.

### A. Relevant Law and Standard of Review

Relevant to this case, a person commits possession of a prohibited item in a correctional facility if he possesses a deadly weapon while in a correctional facility. Tex. Penal Code Ann. § 38.11(d)(2) (West 2011).[2] Appellant was charged with possessing a deadly weapon, specifically a knife or razor blade.

When reviewing sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether any rational fact finder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). We do not sit as thirteenth juror and may not substitute our judgment for that of the fact finder by re-evaluating weight and credibility of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Rather, we defer to the responsibility of the fact finder to fairly resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.* This standard applies equally to both circumstantial and direct evidence. *Id.* Our duty as reviewing court is to ensure

---

[2] Appellant and the State both cite Penal Code section 46.10 when describing the underlying offense. Tex. Penal Code Ann. § 46.10(a) (West 2011) (enumerating elements for offense of "Deadly Weapon in Penal Institution"). However, based on the indictment and jury charge, it appears appellant was actually convicted of "Prohibited Substances and Items in Correctional Facility," Penal Code section 38.11.

the evidence presented actually supports a conclusion that the defendant committed the crime. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

Circumstantial evidence is as probative as direct evidence in establishing guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). An inference is a conclusion reached by considering other facts and deducing a logical consequence from them. *Id.* at 16. Speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented. *Id.* A conclusion reached by speculation may not be completely unreasonable, but it is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt. *Id.* Each fact need not point directly and independently to the appellant's guilt, as long as the cumulative effect of all incriminating facts is sufficient to support the conviction. *Id.* at 13.

Sufficiency of the evidence is measured by elements of the offense as defined in a hypothetically correct jury charge, which accurately explains the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

**B. Analysis**

In his first issue, appellant contends the evidence is insufficient to support a finding that any item found on his person or in his cell block was a deadly weapon.

"Deadly weapon" is statutorily defined as "(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code Ann. § 1.07(a)(17) (West Supp. 2012). "Serious bodily injury" is defined as "bodily injury that creates a substantial risk of death

5

or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46).

We hold the evidence supports a finding that the metal bars found in appellant's commissary bag were deadly weapons. The bars were originally integral parts of wrist braces, designed to prevent a person's wrist from bending. However, the bars had been removed, sharpened at one end, and replaced in the braces. The jury could have reasonably found that the bars had been manifestly adapted for the purpose of causing serious bodily injury. *See Thomas v. State*, 801 S.W.2d 540, 543 (Tex. App.—Houston [14th Dist.] 1990) (Brown, C.J., dissenting) ("It cannot be seriously asserted that inmates are making these shanks to clean their fingernails or to make wood carvings to send home for the holidays. These weapons have only one purpose: the infliction of serious bodily injury and/or death.").[3] We overrule appellant's first issue.

In his second issue, appellant contends the evidence is insufficient to support a finding that any item found on his person or in his cell block was a knife.[4] The term "knife" was not defined in the jury charge. As a general rule, terms need not be defined in the jury charge if they are not statutorily defined. *Ramos v. State*, 303 S.W.3d 302, 308 (Tex. Crim. App. 2009). Jurors are presumed to attach a common understanding to the meaning of terms. *Smith v. State*, 297 S.W.3d 260, 275 (Tex. Crim. App. 2009). "Knife" is commonly defined as "a cutting instrument consisting of a sharp blade fastened to a handle[;] a weapon resembling a knife." Webster's Ninth New Collegiate Dictionary 664 (9th ed. 1991). It is generally understood that there are many types of knives, including a "dagger," which is defined as "a sharp pointed knife for stabbing." *Id.* at 322. Furthermore, under Chapter 46 of the Penal Code (the chapter both parties

---

[3] This court's majority opinion in *Thomas* was reversed by the Court of Criminal Appeals, which concluded that the evidence was sufficient to support a finding the shank was a deadly weapon because it was manifestly designed, made, or adapted to cause serious bodily injury or death. *Thomas v. State*, 821 S.W.2d 616, 620–21 (Tex. Crim. App. 1991).

[4] As noted above, appellant was charged with possessing a deadly weapon, specifically a knife or razor blade. We need not decide whether the razor blades found in appellant's pants constituted deadly weapons because we conclude the jury could have reasonably determined appellant possessed sharpened metal bars which were both knives and deadly weapons.

wrongly assume applies in this case; see footnote 2, *infra*) "knife" is defined as "any bladed hand instrument that is capable of inflicting serious bodily injury or death by cutting or stabbing a person with the instrument."  Tex. Penal Code Ann. § 46.01(7) (West Supp. 2011).

We conclude the bars retrieved from the wrist braces fit within the common definitions provided in the previous paragraph.  The bars were long, flat,[5] made of metal, and sharpened at one end, thus resembling a stabbing knife such as a dagger.  Several witnesses testified that the bars were "shanks," capable of being used to cut or stab another person.  Officer Lipsanen defined "shank" as "slang terminology for a knife or weapon" and agreed the term can refer to a "custom knife."  Thus, the evidence is legally sufficient to support a finding that the bars were "knives."  We overrule appellant's second issue.

Finally, in his third issue, appellant contends the evidence is insufficient to support a finding that he possessed a deadly weapon.  When reviewing sufficiency of the evidence supporting a finding that the accused possessed a deadly weapon, we rely on rules adopted for determining sufficiency of the evidence supporting a finding the accused possessed a controlled substance.  *See Ennis v. State*, 71 S.W.3d 804, 810 (Tex. App.—Texarkana 2002, no pet.) (determining whether defendant possessed weapon in penal institute); *Corpus v. State*, 30 S.W.3d 35, 37–38 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (determining whether defendant possessed firearm).  To prove possession of contraband, the State must show the accused (1) exercised control, management, or care over the contraband and (2) knew the substance possessed was contraband.  *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *Roberts v. State*, 321 S.W.3d 545, 548 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd); *see also* Tex. Penal Code Ann. § 1.07(39) (defining possession as "actual care, custody, control,

_____

[5] It is inferable from the record that the bars were flat—they were designed to prevent a person from bending his wrist.

7

or management"). The State may prove possession through either direct or circumstantial evidence. *Poindexter v. State*, 153 S.W.3d 402, 405–06 (Tex. Crim. App. 2005).

When the accused is not in exclusive possession or control of the place where contraband is discovered, the State must show additional facts and circumstances affirmatively linking the accused to the contraband in order to prove possession. *Id.* at 406; *Roberts*, 321 S.W.3d at 549. The number of links is not dispositive; establishing possession depends on the logical force of all the evidence. *Evans*, 202 S.W.3d at 162. The accused's connection with the contraband must be "more than just fortuitous." *Poindexter*, 153 S.W.3d at 405–06.

Appellant presents several arguments in support of his contention that the evidence is insufficient to support a finding that he possessed the metal bars: (1) other inmates had access to appellant's Velcro-sealed commissary bag and could have placed the bars in the bag; (2) other inmates had a reason to place the bars in appellant's bag because they knew a weapons search was imminent and, thus, needed to dispose of their own weapons; (3) although other inmates told Officer Lipsanen that nobody had "mess[ed]" with appellant's belongings, Officer Lipsanen testified inmates lie to him "everyday"; (4) no witness testified the bars were analyzed for fingerprint or DNA evidence; (5) there is no evidence regarding how appellant obtained the wrist braces; and (6) there is no evidence connecting the metal bars to Tompkins's statement that appellant assaulted the attacking inmates with a shank. Nevertheless, for the following reasons, we conclude the evidence is legally sufficient to support the jury's possession finding.

First, we agree that the fact other inmates had access to appellant's commissary bag weighs against the jury's finding. However, the evidence indicates that officers limited their search primarily to appellant's person and belongings.[6] This evidence weakens appellant's argument that the inmates may have disposed of their own weapons because they knew a weapons search would be conducted; i.e., the inmates would not

---

[6] As noted above, Officer Lipsanen also searched a trash can pointed out to him by other officers.

need to dispose of their weapons if officers focused their search to appellant's belongings. Moreover, the jury could have reasonably inferred that the risk of being seen by officers or other inmates was a strong deterrent for any inmate considering placing a weapon in appellant's bag. Although there is no direct evidence that officers continued monitoring the inmates following the altercation, such a finding is reasonably deductible from the evidence. When Officer Lipsanen arrived at the cell block, he ordered all inmates to return to their cells. He then asked a "pod deputy" to open appellant's cell. This evidence supports an inference that officers continued to patrol the cell block.[7] Obviously, the inmates and officers were aware appellant's belongings would be searched following the altercation. The jury could have reasonably found that an inmate or group of inmates would not place items into appellant's bag because of the risk of apprehension by officers or other inmates.

Second, the fact that the metal bars were not tested for fingerprints or DNA neither proves nor disproves appellant possessed the bars. Additionally, the State's failure to present evidence regarding the methods or means appellant employed to obtain the wrist braces did not render the evidence insufficient to establish possession. Appellant could have received the braces from the medical clinic, stolen them from another inmate, or bartered for them. It was unnecessary for the State to prove the source of the braces; it is well-known that jailhouse contraband is brought into a correctional facility surreptitiously.

Third, after the initial confrontation between appellant and the attacking inmates, appellant returned to his cell and paced back and forth. He then walked behind the pillar near where the attacking inmates were playing dominoes and suddenly ran back to his cell; the attacking inmates followed and assaulted appellant. Later, one of the attacking inmates, Tompkins, stated that appellant had come "at them with a shank." Additionally,

---

[7] Officer Lipsanen testified that he began conducting his search within five minutes after arriving at the correctional facility. Appellant argues inmates could have placed the wrist braces in his bag during the five-minute period. However, as discussed, the evidence supports an inference that officers continued to monitor the inmates during that period.

9

appellant was found with a homemade tattooing instrument and a disassembled disposable razor. This evidence supports a finding that appellant manufactured and carried contraband while in the correctional facility and displayed a shank on the day the metal bars were found in his bag.

Fourth, circumstances surrounding discovery of the metal bars tend to incriminate appellant. Officer Lipsanen testified he did not determine the bars had been modified until he removed them from the wrist braces; until that point, the bars were merely incorporated parts of orthotics, not readily observable weapons. It is reasonable to assume that other inmates would not have used the seemingly innocuous wrist braces if they had wanted to frame appellant by placing weapons in his bag. Furthermore, appellant's behavior in sewing a contraband pouch to the waistband of his pants is consistent with hiding sharpened bars in the braces.

Accordingly, viewing the evidence as a whole, we conclude there are sufficient affirmatively links connecting appellant to the metal bars. *See Evans*, 202 S.W.3d at 162 ("It is . . . not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial."). We hold a rational juror could find beyond a reasonable doubt that the bars belonged to appellant and were not placed in his bag by other inmates. Appellant's third issue is overruled.

We affirm the trial court's judgment.


/s/     Charles W. Seymore
        Justice


Panel consists of Justices Seymore, Boyce, and Mirabal.[8]

Do Not Publish — Tex. R. App. P. 47.2(b).

---

[8] Senior Justice Margaret Garner Mirabal sitting by assignment.