

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-17-00340-CR

———————————————

ANTONO MASADA JAMES RAGSDALE, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 213th District Court
Tarrant County, Texas
Trial Court No. 1457150D

Before Kerr, Pittman, and Birdwell, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

After a bench trial in October 2017, the trial court found Antono Masada James Ragsdale guilty of a May 2016 assault on a public servant and sentenced him to four years in the penitentiary. Ragsdale was convicted of having assaulted a detention officer while Ragsdale was in jail. We affirm.

### Ragsdale fails to properly present his points.

After an abatement hearing, we granted Ragsdale's appointed appellate counsel's motion to withdraw and allowed Ragsdale to proceed pro se. Although Ragsdale is appealing his October 11, 2017 conviction, in the document that we construe as his pro se appellant's brief, he addresses an entirely different legal matter that arose in September 2018. In response, the State asserts that "there is nothing for this Court to review" and asks us to affirm the trial court's judgment. We agree with the State that Ragsdale has not attacked the correct judgment in his opening brief and that it thus presents nothing for review. *See* Tex. R. App. P. 38.1; *see generally Muhammed v. State*, 331 S.W.3d 187, 195 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

Later Ragsdale filed a document that we construe as his reply brief in which he raised two points attacking his October 11, 2017 conviction. Procedurally, this presents a problem. Issues raised for the first time in a reply brief are not properly presented for review, and we need not address them. *Cruz v. State*, No. 05-18-00359-CR, 2018 WL 6167885, at *2 (Tex. App.—Dallas Nov. 26, 2018, no pet.) (mem. op.,

not designated for publication) (citing *State v. Sanchez*, 135 S.W.3d 698, 700 (Tex. App.—Dallas 2003), *aff'd*, 138 S.W.3d 324 (Tex. Crim. App. 2004)). But assuming Ragsdale had properly presented his two points, they are meritless. *See id.*

**Had Ragsdale properly presented his first point, it has no merit.**

In Ragsdale's first point, he asserts that the "trial court erred in a prosecut[orial] misconduct failure to disclose favorable evidence, using tainted evidence, perjury testimony, to obtain a conviction." Specifically, Ragsdale complains that the video admitted into evidence showing him assaulting a detention officer failed to include what happened before and after the video clip; Ragsdale contends that what happened before and after would have shown exculpatory material. But in his brief, Ragsdale does not explain how evidence preceding or following his assault would have exculpated him. The record shows, however, two instances when Ragsdale felt that the police seriously wronged him.

**A. The alleged exculpatory evidence that preceded Ragsdale's assault is irrelevant.**

One matter that concerned Ragsdale at trial and which he refers to in his reply brief is his assertion that he should not have been in jail in the first place because a racist officer arrested him without a warrant and without probable cause. Over the prosecutor's emphatic objection that the arrest—with or without probable cause—was irrelevant once Ragsdale was within the jail, the trial court nevertheless heard both the arresting officer's and Ragsdale's testimony on the matter and ruled against

3

Ragsdale. There was no arrest video; the arresting officer said that she was not wearing a body camera because she had not yet been issued one. Even assuming the arrest was improper, an improper arrest is not a defense to assaulting a detention officer. *See generally* Tex. Penal Code Ann. § 38.03(b) ("It is no defense to prosecution under this section that the arrest or search was unlawful."). And the arrest's propriety was not relevant when deciding whether Ragsdale later assaulted a detention officer while in jail. *See* Tex. R. Evid. 402.

## B. The alleged exculpatory evidence that followed Ragsdale's assault is irrelevant.

Ragsdale also complained that he was beaten while in jail in May 2016. Ragsdale's first appointed trial counsel[1] filed a *Brady* motion, and the State filed one *Brady* notice in which it disclosed that after Ragsdale had assaulted the detention officer, Ragsdale was taken to the fingerprinting-and-processing room where he became agitated and upset and balled his hands into fists. *See Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196–97 (1963). (One document in the record shows that

---

[1]Ragsdale was on his second appointed trial counsel when his trial started. Elsewhere, Ragsdale expressed dissatisfaction that he was not allowed to represent himself along with his appointed counsel, but an accused has no absolute right to hybrid representation, and courts may ignore pro se motions filed by defendants with appointed counsel. *See Scarbrough v. State*, 777 S.W.2d 83, 92 (Tex. Crim. App. 1989); *Anthony v. State*, No. 03-17-00327-CR, 2017 WL 6503872, at *1 (Tex. App.—Austin Dec. 14, 2017, order) (per curiam) (not designated for publication), *disp. on merits*, No. 03-17-00327-CR, 2019 WL 639492, at *3 (Tex. App.—Austin Feb. 14, 2019, pet. filed) (mem. op., not designated for publication). When given the option to represent himself at trial, Ragsdale requested an attorney.

Ragsdale is 6'4" tall and weighs 250 pounds.) Concerned that Ragsdale was about to commit another assault, a sergeant struck him in the face "more than one time" and restrained him against a wall, but when Ragsdale continued to resist, other officers took him to the ground. The trial court was aware of this incident and had reviewed the internal-affairs file in camera before Ragsdale's trial began.[2] Why this would upset Ragsdale is obvious, but it is not relevant to whether he had earlier that day assaulted a detention officer in the hallway. *See* Tex. R. Evid. 402.

Even if Ragsdale had properly presented his first point, it has no merit.

**Ragsdale's second point, had it been properly presented, lacks merit.**

In his second point, Ragsdale argues that "the trial court abused its discretion in admitting tainted evidence without proving the chain of custody." Here, Ragsdale again attacks the video (and a still photo taken from the video showing the moment he struck the detention officer) and asserts that it was tampered with. The video shows

- Ragsdale and two detention officers (Alex Taylor and Zachary Murray) entering a hallway,

- Ragsdale turning around suddenly and striking Taylor,

- a brief standoff, after which Ragsdale appears to comply with Taylor's instructions, and then

---

[2]Ragsdale alleged that the video of this incident was tampered with. The commander over internal affairs testified, denied hiding any evidence, asserted that he had brought the file in its entirety to the trial court, and denied altering the video.

- Taylor and Murray escorting Ragsdale to another door where they remove his handcuffs and place him in a "segregated cell."

The still photo was admitted without objection.

Before the trial court admitted the video, Taylor properly authenticated it, stating that it was an accurate depiction of what occurred, had not been altered or changed in any way, and matched what he remembered. To the extent that Ragsdale questions the video's completeness, Taylor said, "That was the only thing that happened with me," but also conceded the obvious—that the video did not capture everything that had happened in the hallway that day. The prosecutor, too, assured the trial court that the "entirety of the offense [was] captured on the video" but added that the video did not show what had happened while Ragsdale was being arraigned moments earlier before entering the hallway. Ragsdale testified and contested the accuracy of the video, asserting that someone had tampered with it.

Ultimately, Ragsdale's complaints about the accuracy and completeness of the video bear on its evidentiary weight and not its admissibility. *See Rocha v. State*, No. 05-18-00161-CR, 2019 WL 1467964, at *7 (Tex. App.—Dallas Apr. 3, 2019, no pet.) (mem. op., not designated for publication). Chain-of-custody proof goes to the weight rather than the admissibility of the evidence. *Ennis v. State*, 71 S.W.3d 804, 808 (Tex. App.—Texarkana 2002, no pet.); *see Ballard v. State*, 23 S.W.3d 178, 182–83 (Tex. App.—Waco 2000, no pet.). Faced with Taylor's testimony that the video was accurate and Ragsdale's unsubstantiated claim that it was not, we hold that the trial

6

court did not abuse its discretion in admitting the video. *See Rocha*, 2019 WL 1467964, at *7 ("The fact that the camera may not have captured all movement does not make the identified images it did capture inadmissible. Meanwhile, there is no affirmative evidence that the video images were altered by the neighbor, the police, or anyone else."); *Qualls v. State*, 547 S.W.3d 663, 680 (Tex. App.—Fort Worth 2018, pet. ref'd) ("[P]roof of only an opportunity to tamper, alter, or commingle the challenged evidence is not sufficient to mandate its exclusion."); *Watson v. State*, 421 S.W.3d 186, 190 (Tex. App.—San Antonio 2013, pet. ref'd) ("Courts traditionally . . . allow[] the jury to weigh the credibility of evidence, '[s]o long as the authenticity of the proffered evidence was at least within the zone of reasonable disagreement.'"); *Ennis*, 71 S.W.3d at 809 ("Warren's testimony provides a basis on which the trial court could have concluded the weapons from the May 14 and May 17 incidents were not commingled."); *Ballard*, 23 S.W.3d at 183 ("The informant, Tanner, and Fincher all testified that the duplicate had not been altered in any respect. Ballard offered no affirmative evidence that the duplicate had been tampered with. Accordingly, we conclude that the State established a proper chain of custody for the exhibit.").

So had Ragsdale properly presented his second point, it also had no merit.

## Conclusion

We affirm the trial court's judgment.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: June 13, 2019