ACCEPTED
01-15-00213
FIRST COURT OF APPEALS
HOUSTON, TEXAS
12/17/2015 9:17:56 AM
CHRISTOPHER PRINE
CLERK

## NO. 01-15-00213-CR

## IN THE COURT OF APPEALS
### FOR THE FIRST JUDICIAL DISTRICT OF TEXAS
### AT HOUSTON

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
12/17/2015 9:17:56 AM
CHRISTOPHER A. PRINE
Clerk

| | | |
|---|---|---|
| **ANTHONY MICHAEL LONGORIA** | § | **APPELLANT** |
| | § | |
| **VS.** | § | |
| | § | |
| **THE STATE OF TEXAS** | § | **APPELLEE** |

_____

## APPEAL FROM CAUSE NO. 1378394
## IN THE 337TH DISTRICT COURT
## OF HARRIS COUNTY, TEXAS

_____

## APPELLANT'S AMENDED BRIEF

_____

**ADAM B. BROWN**
**SBOT No. 01728540**
**300 Main, Ste. 200**
**Houston, Texas 77002**
**Phone (713) 223-0051**
**Fax (713) 223-0877**
**adambrownlaw@yahoo.com**

**ATTORNEY FOR APPELLANT**

## APPELLANT REQUESTS ORAL ARGUMENT

# Identity of Parties and Counsel

The following is a complete list of all parties to the trial court's judgment, and the names and addresses of all trial and appellate counsel:

Anthony Michael Longoria ................................................................. Appellant

State of Texas ...............................................................................Appellee

James Tucker Graves ............................................Appellant's Appointed Counsel at Trial
402 Main St., Ste. 200
Houston, Texas 77002

Abigail Anastasio ....................................................Appellant's Appointed Counsel at Trial
50 Briar Hollow Lane, Suite 235 W.
Houston, Texas 77027

Coby Leslie.................................................................Assistant District Attorney at Trial
Harris County District Attorney's Office
1201 Franklin
Houston, Texas 77002

Adam B. Brown ...............................................Appellant's Appointed Counsel on Appeal
300 Main, Ste. 200
Houston, Texas 77002

Alan Curry ...............................................................Assistant District Attorney on Appeal
Harris County District Attorney's Office
1201 Franklin
Houston, Texas 77002

Hon. Renee Magee ........................................................................... Trial Judge

# Contents

*Page*

Identity of Parties and Counsel ........................................................................2

Table of Contents ............................................................................................3

List of Authorities ..........................................................................................5

Statement of the Case .....................................................................................10

Issues Presented..............................................................................................10

      Issue One: The trial court erred in providing a limiting instruction in the jury charge in violation of Texas Rule of Evidence 105.

      Issue Two: The trial court erred in providing a limiting instruction in the jury charge in violation of Article 36.14 of the Texas Code of Criminal Procedure.

      Issue Three: The trial court erred in providing a limiting instruction in the jury charge in violation of Appellant's Sixth Amendment right to counsel.

      Issue Four: The trial court abused its discretion in admitting a video recording that was not authenticated pursuant to Texas Rule of Evidence 901.

Summary of the Arguments ............................................................................11

Background Facts............................................................................................12

Arguments and Authorities ............................................................................16

   Issues One, Two, and Three ........................................................................16

A.   Facts ........................................................................................ 16

B.   Standard of Review ................................................................. 17

C.   The trial court erred in including the limiting instruction
     in the jury charge. ................................................................. 17

D.   The error infringed on Appellant's Sixth Amendment right to
     counsel ..................................................................................... 19

E.   Harm Analysis ........................................................................ 25

     1.  Constitutional Error .......................................................... 25

     2.  Harm Analysis under the *Almanza* Standard .................... 28

Issue Four ........................................................................................ 30

A.   Facts ........................................................................................ 30

B.   Standard of Review ................................................................. 32

C.   The trial court abused its discretion in admitting the video
     recording because it was not authenticated... .......................... 32

D.   The error harmed Appellant's substantial rights. .................... 43

Prayer ............................................................................................... 47

Certificate of Service ....................................................................... 48

Certificate of Compliance ................................................................ 48

# List of Authorities

**Cases:**

*Agbogwe v. State*, ...............................................................................20, 29
    414 S.W.3d 820 (Tex. App.-Houston [1st Dist.] 2013, no pet.)

*Almanza v. State*, ...............................................................................17, 28
    686 S.W.2d 157 (Tex. Crim. App. 1984)

*Angleton v. State*, ...............................................................................32
    971 S.W.2d 65 (Tex. Crim. App. 1998)

*Ballard v. State*, ...............................................................................38
    23 S.W.3d 178 (Tex. App.-Waco 2000, no pet.)

*Barrios v. State*, ...............................................................................17
    283 S.W.3d 348 (Tex. Crim. App. 2009)

*Barshaw v. State*, ...............................................................................44, 47
    342 S.W.3d 91 (Tex. Crim. App. 2011)

*Blevins v. State*, ...............................................................................18
    884 S.W.2d 219 (Tex. App.-Beaumont 1994, no pet.)

*Brown v. State*, ...............................................................................41
    14-03-01265-CR, 2005 WL 363950
    (Tex. App.—Houston [14th Dist.] Feb. 17, 2005, pet. ref'd)

*Burnett v. State*, ...............................................................................44, 47
    88 S.W.3d 633 (Tex. Crim. App. 2002)

*Curry v. State*, ...............................................................................20, 29
    861 S.W.2d 479 (Tex. App.-Fort Worth 1993, pet. ref'd)

*Delgado v. State*, ...............................................................................*passim*
    235 S.W.3d 244 (Tex. Crim. App. 2007)

*Druery v. State*, ............................................................................17, 28
    225 S.W.3d 491 (Tex. Crim. App. 2007)

*Ex parte Ewing*, ..................................................................................21
    570 S.W.2d 941 (Tex. Crim. App. 1978)

*Gallo v. State*, ....................................................................................32
    239 S.W.3d 757 (Tex. Crim. App. 2007)

*Garcia v. State*, .................................................................................40
    05-07-00540-CR, 2008 WL 2655622
    (Tex. App.—Dallas July 8, 2008, pet. ref'd)

*Garcia v. State*, .................................................................................44
    126 S.W.3d 921 (Tex. Crim. App. 2004)

*Hammock v. State*, .............................................................................18
    46 S.W.3d 889 (Tex. Crim. App. 2001)

*Harris v. State*, .................................................................................26
    790 S.W.2d 568 (Tex. Crim. App. 1989)

*Hernandez v. State*, ...........................................................................26
    80 S.W.3d 63 (Tex. App.–Amarillo 2002, no pet.)

*Huffman v. State*, ...............................................................................33
    746 S.W.2d 212 (Tex. Crim. App. 1988)

*King v. State*, ....................................................................................44
    953 S.W.2d 266 (Tex. Crim. App. 1997)

*Lakeside v. Oregon*, ....................................................................*passim*
    435 U.S. 333, 98 S. Ct. 1091, 55 L. Ed. 2d 319 (1978)

*Langham v. State*, ..............................................................................26
    305 S.W.3d 568 (Tex. Crim. App. 2010)

*McGowan v. State*, .......................................................................................................19
    375 S.W.3d 585 (Tex. App.-Houston [14th Dist.] 2012, pet. ref'd)

*McNeil v. State*, ....................................................................................................20, 29
    452 S.W.3d 408 (Tex. App.—Houston [1st Dist.] 2014), pet. ref'd)

*Morales v. State*, .......................................................................................................44
    32 S.W.3d 862 (Tex. Crim. App. 2000)

*Motilla v. State*, .......................................................................................................26
    78 S.W.3d 352 (Tex. Crim. App. 2002)

*Page v. State*, .......................................................................................................36
    125 S.W.3d 640 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd)

*Patterson v. Illinois*, .......................................................................................................22
    487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988)

*Pollard v. State*, .......................................................................................................26
    255 S.W.3d 184 (Tex. App.–San Antonio 2008),
    *aff'd*, 277 S.W.3d 25, 33 (Tex. Crim. App. 2009)

*Randell v. State*, ....................................................................................................34, 40
    No. 07–11–00493–CR, 2013 WL 309001
    (Tex.App.-Amarillo Jan. 25, 2013, pet. ref'd)

*Reavis v. State*, ....................................................................................................33, 35
    84 S.W.3d 716 (Tex. App.-Fort Worth 2002, no pet.)

*Ryan v. State*, ....................................................................................................18, 20, 29
    937 S.W.2d 93 (Tex. App.-Beaumont 1996, pet. ref'd)

*Sakil v. State*, .......................................................................................................17
    287 S.W.3d 23 (Tex. Crim. App. 2009)

*Schutz v. State*, .......................................................................................................44
    63 S.W.3d 442 (Tex. Crim. App. 2001)

*Snowden v. State*, ...............................................................................25, 26
   353 S.W.3d 815 (Tex. Crim. App. 2011)

*Standmire v. State*, ...........................................................................33
   --- S.W.3d ----, 2014 WL 3882940
   (Tex. App.—Waco Aug. 7, 2014, pet. ref'd)

*State v. Frye*, .........................................................................................22
   897 S.W.2d 324 (Tex. Crim. App. 1995)

*Strickland v. Washington*, ...............................................................21
   466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)

*Teeter v. State*, .....................................................................................41
   05-06-00309-CR, 2007 WL 510356
   (Tex. App.—Dallas Feb. 20, 2007, no pet.)

*United States v. Johnson*, ...............................................................18
   46 F.3d 1166 (D.C. Cir. 1995)

*United States v. Rhodes*, ...................................................................18
   62 F.3d 1449 (D.C. Cir. 1995)

*United States v. Taylor*, ....................................................................37
   530 F.2d 639 (5th Cir.),
   *cert. denied*, 429 U.S. 845, 97 S.Ct. 127, 50 L.Ed.2d 117 (1976)

*Walters v. State*, ................................................................................32
   247 S.W.3d 204 (Tex. Crim. App. 2007)

*Warren v. State*, ..........................................................................34, 39
   No. 08–11–00029–CR, 2012 WL 651642
   (Tex. App.-El Paso Feb.29, 2012, no pet.)

*Watson v. State*, ..........................................................................................38
   421 S.W.3d 186 (Tex. App.—San Antonio 2013, pet. ref'd)

*Weatherred v. State*, ..........................................................................................32
   15 S.W.3d 540 (Tex. Crim. App. 2000)

**Statutes, Codes and Constitutional Provisions:**

U.S. CONST. amend. VI ..........................................................................*passim*

TEX. CODE CRIM. PROC. art. 36.14 ...................................................................18, 19

TEX. R. APP. P. 44.2 ...........................................................................................25, 43

TEX. R. EVID. 105 ...........................................................................................18, 19

TEX. R. EVID. 901 .............................................................................................32, 33

**Other Sources:**

Daniel D. Blinka, *Ethics, Evidence, and the Modern Adversary Trial*,
   19 Geo. J. Legal Ethics 1, 19 (2006) ...................................................................29

**To the Honorable Justices of the Court of Appeals:**

## Statement of the Case

Appellant Anthony Michael Longoria was charged by indictment with the first degree felony offense of aggravated robbery, alleged to have occurred on February 21, 2013. CR20. Appellant entered a plea of not guilty and a jury found him guilty. CR105; 127. The jury assessed a sentence of 20 years imprisonment. CR127. Appellant filed a motion for new trial, which was overruled by operation of law. CR135. Appellant filed timely written notice of appeal. CR131.

## Issues Presented

**Issue One: The trial court erred in providing a limiting instruction in the jury charge in violation of Texas Rule of Evidence 105.**

**Issue Two: The trial court erred in providing a limiting instruction in the jury charge in violation of Article 36.14 of the Texas Code of Criminal Procedure.**

**Issue Three: The trial court erred in providing a limiting instruction in the jury charge in violation of Appellant's Sixth Amendment right to counsel.**

**Issue Four: The trial court abused its discretion in admitting a video recording that was not authenticated pursuant to Texas Rule of Evidence 901.**

## Summary of the Arguments

<u>Issues One, Two, and Three:</u>  The trial court erred in providing a limiting instruction for extraneous offense evidence over Appellant's objection during the guilt-innocence phase. Appellant did not request a limiting instruction when the evidence was admitted, so the evidence was admitted for all purposes under Texas Rule of Evidence 105. Thus, the limiting instruction was not law "applicable to the case" under Article 36.14 of the Code of Criminal Procedure, and should not have been given. Moreover, because foregoing a limiting instruction is a matter of trial strategy, the trial court violated Appellant's Sixth Amendment right to counsel by overriding counsel's strategic decision. The instruction harmed the defense because it focused the jury's attention on prejudicial evidence Appellant wished to minimize, and instructed the jury to consider the evidence for specific purposes.

<u>Issue Four:</u>  The trial court erred in admitting during the punishment phase a video recording that was not properly authenticated. The authenticating witness had no personal knowledge that the recording equipment was functioning properly. Additionally, the authenticating witness failed to establish how the equipment was activated, how it was deactivated, and how the recording was accessed and reproduced for trial. The trial court abused its discretion in admitting the evidence because the State failed to establish that the recording system was capable of producing an accurate

recording. Because the video recording captured a conversation in which Appellant and the codefendant schemed to mislead the police, discussed the incriminating evidence, and demonstrated a conspicuous lack of remorse, Appellant was harmed by its admission.

## Background Facts

During the evening of February 21, 2013, the complainant, Branislav Kupresakovic, was at his Katy home with his wife and his 21-year-old son. 3RR15-20. He heard a knock at the front door, looked through the peephole, and observed a young Hispanic male, whom he assumed to be a friend of his son. 3RR20. When complainant opened the door a little bit the male pushed against the door. 3RR20-21. Two additional males appeared; the complainant recalled that one was carrying a handgun and the other was carrying a shotgun. 3RR20-21; 31. One of the additional males had glasses and a dark scarf covering his face. 3RR32. The males pushed the door open and entered. 3RR20-21. One of the intruders told the complainant to get down on the ground and tried to tie him up with tape. 3RR23.

The complainant yelled to his wife, who ran into the master bedroom along with the complainant's son. 3RR23; 42. Once in the bedroom, the complainant's son, Slaven Kupresakovic, retrieved the complainant's handgun from under the bed. 3RR43. When one of the intruders entered the bedroom, Slaven shot him several times. 3RR49-51.

Slaven never saw the other two intruders, who ran out of the house at the sound of gunfire. 3RR53.

A neighbor noticed two males running across a yard in a suspicious manner and decided to follow them in his car. 3RR76. While males circled the neighborhood in an SUV, the neighbor reported them to the Sheriff's department and continued to follow them until numerous patrol cars arrived and stopped the vehicle. 3RR76-77.

The two apprehended suspects were identified as Brandon Trey King and Appellant Longoria. 3RR114-15. The third intruder, who was killed at the scene of the home invasion, was identified as Douglas Enriquez. 3RR115. King and Appellant were detained in a patrol car and their conversation recorded. 3RR113-114. Sergeant C. Clopton of the Homicide Division arrived at the scene where King and Appellant had been apprehended and reviewed the recording. 3RR113-14. The two suspects were then transported to the Homicide Office. 3RR115.

Appellant initially agreed to be interviewed and denied involvement, but then indicated that he wished to terminate the interview and consult with counsel. 3RR117. After speaking with King, who had admitted involvement, Appellant told Sergeant Clopton that he wanted to tell the truth. 3RR118-21. In a video-recorded interview (State's Exhibit 64), Appellant stated that he was visiting from out of town and staying with his cousin King. King introduced Appellant to his friend Douglas Enriquez, who

13

came up with the idea to rob King's marijuana dealer.[1] Appellant did not want to do it, but King could not be dissuaded so Appellant went along to protect King. The plan was for Enriquez to knock on the door, kick the door down, and get the people on the floor; King and Appellant were to "just stand there and look intimidating." Appellant and King wore gloves and masks and Enriquez carried the gun. Once inside the residence, Enriquez handed the gun to Appellant and went to the back room to round up the residents. Appellant immediately heard gunshots and he and King fled. Appellant threw the gun out the window of King's vehicle a short distance away. SX64

In the vehicle investigators located a backpack containing two dark-colored bandanas, another backpack containing duct tape, and three black air-soft BB-gun pistols. 3RR105-108. The following day, a local resident found a loaded handgun in the street a short distance from the scene and turned it over to the sheriff's office. 3RR89-93. The gun was found to have been reported stolen in Wiley, Texas, where Appellant resided.[2] 3RR142-43.

Codefendant Brandon Trey King testified for the defense. King testified that he was 18 years old at the time of the offense and Appellant was 20. 3RR158. King and Appellant picked up Douglas Enriquez on February 21, 2013, with the plan of going to

---

1 Slaven Kupresakovic initially testified that he did not sell marijuana, but thereafter testified that he had sold marijuana to King on several occasions. 4RR14.
2 Codefendant Brandon Trey King testified that he visited family in Wiley prior to the robbery.

14

the mall. 3RR164-65. When King drove by the house of his marijuana dealer, Enriquez suggested robbing him. 3RR166. Enriquez exited the car first and King followed him; as they approached the house King first noticed that Enriquez had a gun in his waistband. 3RR168; 200. King was wearing a bandana and carrying duct tape. 3RR168. Appellant followed King and tried to convince him to leave and go the mall, as planned. 3RR169. King testified that Appellant looked "shocked" when Enriquez handed him the gun after entering the house. 3RR171-72. When King heard shots, Appellant grabbed his arm and they ran to the car. 3RR173-74. After they were apprehended and placed in a patrol car, King told Appellant that they should tell police a fabricated story that they had just dropped off a friend named Jackson; but thereafter at the Sheriff's office King told Appellant to "save himself and tell the truth." 3RR176, 204-205. King testified that the backpack containing the two bandanas was his, and that the backpack containing duct tape belonged to Appellant. 3RR189-91.

---

3RR193.

## Arguments and Authorities

**Issue One: The trial court erred in providing a limiting instruction in the jury charge in violation of Texas Rule of Evidence 105.**

**Issue Two: The trial court erred in providing a limiting instruction in the jury charge in violation of Article 36.14 of the Texas Code of Criminal Procedure.**

**Issue Three: The trial court erred in providing a limiting instruction in the jury charge in violation of Appellant's Sixth Amendment right to counsel.**

### A.    Facts

Appellant objected to the inclusion of the following limiting instruction for extraneous offenses in the jury charge:

> You are further instructed that if there is any evidence before you in this case regarding the defendant's committing an alleged offense or offenses other than the offense alleged against him in the indictment in this case, you cannot consider such evidence for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offense or offenses, if any, and even then you may only consider the same, in determining the motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident of the defendant, if any, in connection with the offense, if any, alleged against him in the indictment and for no other purpose.

CR99. Appellant urged that "there really hasn't been any evidence of extraneous offenses" and requested that the instruction be deleted from the charge. 4RR12. The

16

trial court refused the request, stating that there was "very minimal" evidence of extraneous offenses, namely, that Appellant had used marijuana, and evidence that the gun used in the robbery had been stolen in Appellant's hometown of Wiley, Texas. 4RR12.

## B. Standard of Review

To review claims of jury charge error, an appellate court must first ask whether there was error in the charge. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009). If there was error and if the appellant objected to the error at trial, "reversal is required if the error is 'calculated to injure the rights of [the] defendant,' " meaning that "there must be some harm to the accused from the error." *Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009) (quoting *Almanza v. State*, 686 S.W.2d 157, 161 (Tex. Crim. App. 1984). "[A]ny harm, regardless of degree, is sufficient to require reversal." *Druery v. State*, 225 S.W.3d 491, 504 (Tex. Crim. App. 2007).

## C. The trial court erred in including the limiting instruction in the jury charge.

In *Delgado v. State*, 235 S.W.3d 244 (Tex. Crim. App. 2007), the Court of Criminal Appeals examined whether a trial court must, sua sponte, include a reasonable-doubt and limiting instruction in the jury charge when the State offers evidence of an extraneous offense at the guilt stage of a criminal trial. The Court noted that Article 36.14 of the Code of Criminal Procedure requires the trial judge to deliver

17

to the jury "a written charge distinctly setting forth the law applicable to the case." *Id.* at 247. But the Court acknowledged that a trial judge does not have a duty to instruct the jury on all potential defensive issues, lesser-included offenses, or evidentiary issues, because these are issues that "frequently depend upon trial strategy and tactics." *Id.* at 249. The Court further noted that Texas courts have held that the decision of whether to request a limiting instruction concerning the proper use of certain evidence, including extraneous offenses, may be a matter of trial strategy. *Id.*, citing *Ryan v. State*, 937 S.W.2d 93, 104 (Tex. App.-Beaumont 1996, pet. ref'd); *Blevins v. State*, 884 S.W.2d 219, 230 (Tex. App.-Beaumont 1994, no pet.). For example, a party might well intentionally forego a limiting instruction as part of its "deliberate ... trial strategy to minimize the jury's recollection of the unfavorable evidence." *Id.,* quoting *United States v. Johnson*, 46 F.3d 1166, 1171 (D.C. Cir. 1995); *United States v. Rhodes*, 62 F.3d 1449, 1453–54 (D.C. Cir.1995). Moreover, if a defendant does not request a limiting instruction under Rule 105 at the time that evidence is admitted, then the trial judge has no obligation to limit the use of that evidence later in the jury charge. *Id.* at 251; *Hammock v. State*, 46 S.W.3d 889, 894 (Tex. Crim. App. 2001). Once evidence has been admitted without a limiting instruction, it is part of the general evidence and may be considered for all purposes. *Id.*; *McGowan v. State*, 375 S.W.3d 585, 593 (Tex. App.-Houston [14th Dist.] 2012, pet. ref'd).

Accordingly, the Court concluded that a limiting instruction concerning the use of extraneous offense evidence should be given in the guilt-stage jury charge "only if the defendant requested a limiting instruction at the time the evidence was first admitted." *Id.* The Court observed that if the trial counsel's strategy was to forego objection and a limiting instruction so as not to emphasize the evidence, this strategy was "eminently successful" because the appellant was convicted of a lesser included offense. *Id.* at 254.

In the instant case, Appellant did not request a limiting instruction when the evidence of his marijuana use and the stolen gun was admitted. Accordingly, under Rule of Evidence 105, the evidence was admitted for all purposes. Thus, the limiting instruction was not law "applicable to the case" under Article 36.14 of the Code of Criminal Procedure, and should not have been given. *Delgado,* 235 S.W.3d at 250-52.

**D.      The error infringed on Appellant's Sixth Amendment right to counsel.**

By insisting on including the instruction, over Appellant's objection, the trial court interfered with Appellant's apparent trial strategy of not drawing attention to the evidence. As noted by the Court of Criminal Appeals in *Delgado,* the decision of whether to request a limiting instruction concerning the proper use of certain evidence, including extraneous offenses, is properly a matter of trial strategy, namely, "to minimize the jury's recollection of the unfavorable evidence." *Id.* at 249. Numerous

courts have found this strategy to be valid. *See Delgado, supra,* at 254; *Ryan v. State*, 937 S.W.2d 93, 104 (Tex. App.-Beaumont 1996, pet. ref'd) ("[Absent anything in the record explaining counsel's reasoning], we can only conclude his trial strategy may have been not to draw further attention to the extraneous offenses"); *Curry v. State*, 861 S.W.2d 479, 484-85 (Tex. App.-Fort Worth 1993, pet. ref'd) (holding counsel not ineffective for not requesting limiting instruction during punishment, because instruction was requested when extraneous offense evidence was admitted and strategy may have been not to remind the jury of the evidence); *Agbogwe v. State*, 414 S.W.3d 820, 838 (Tex. App.-Houston [1st Dist.] 2013, no pet.) ("It is reasonable to conclude ... [that] defense counsel decided that seeking an instruction to disregard Ozoh's testimony would only bring further attention to it"); *McNeil v. State*, 452 S.W.3d 408, 415 (Tex. App.—Houston [1st Dist.] 2014), pet. ref'd (trial counsel's choice not to request a burden-of-proof instruction and a limiting instruction about extraneous offenses was pursuant to valid strategy to avoid drawing further attention to defendant's potential extraneous offenses or misconduct).

The Court of Criminal Appeals has observed:

> The trial judge ordinarily should not interfere with the attorney-client relation by inquiring into the matter of strategy and tactics. Such an inquiry should be made only if from all appearances there could be no plausible basis in strategy or tactics for counsel's actions, and then the inquiry should be made out of the presence of the jury and of the

> prosecutor. A reply by counsel that his actions are based on strategic or tactical considerations that will become apparent later in the trial should satisfy the court's inquiry, and counsel should not be required to reveal his strategy and tactics at that time. Full inquiry should be made only if after the trial from all appearances there still is no plausible basis in strategy or tactics for his actions.

*Ex parte Ewing*, 570 S.W.2d 941, 945 (Tex. Crim. App. 1978) (footnote omitted).

These observations are grounded in the Sixth Amendment's guarantee that counsel be given "wide latitude . . . in making tactical decisions." *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 2065, 80 L. Ed. 2d 674 (1984). Courts considering a challenge to counsel's performance pursuant to the Sixth Amendment must employ a standard in which judicial scrutiny of counsel's performance is highly deferential, with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689. There is no legal basis for a court to apply a less deferential standard when making judgments concerning an attorney's strategy in the course of trial.

"One of the primary purposes of the Sixth Amendment right to counsel is to preserve the integrity of the attorney-client relationship once it has been established." *State v. Frye*, 897 S.W.2d 324, 327 (Tex. Crim. App. 1995); *Patterson v. Illinois*, 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988). By supplanting counsel's strategy with the court's own judgment concerning a jury charge on a defensive issue, a court

violates these Sixth Amendment principles. A judge should not interfere, or even inquire, unless "there could be no plausible basis in strategy or tactics for counsel's actions." *Ewing*, 570 S.W.2d at 945.

The strategy employed here has been repeatedly recognized as not just plausible, but valid and demonstrably successful. *See, e.g., Delgado*, 235 S.W.3d at 254 (finding the strategy to be an "eminently successful one"). In fact, the trial court acknowledged that the extraneous offense evidence was "very minimal" (4RR12), circumstances that would further justify the strategy. In these circumstances, the trial court violated Appellant's Sixth Amendment rights in overriding counsel's sound judgment.

The Supreme Court examined a similar issue in *Lakeside v. Oregon*, 435 U.S. 333, 335, 98 S. Ct. 1091, 1092, 55 L. Ed. 2d 319 (1978). In an escape prosecution in which the defendant did not testify, the trial court instructed the jury, over defense objection, that the defendant's decision not to testify should not be considered and should not give rise to any adverse inference. 435 U.S. at 335, 98 S.Ct. at 1092. The defense objected on the grounds that the instruction itself called attention to the defendant's failure to testify. 435 U.S. at 335, 98 S.Ct. at 1093. On appeal, the defendant urged that in certain circumstances, such as when a defense is presented through several witnesses, the jury may not notice a defendant's failure to testify and the instruction would serve only to draw attention to it. 435 U.S. at 340-41, 98 S.Ct. at

1095. The defendant challenged the trial court's inclusion of the instruction over defense objection on Fifth and Sixth Amendment grounds. *Id.*

The Court found that including the instruction over defense objection did not violate the Fifth Amendment's privilege against self-incrimination because the jury was not likely to disregard the instruction; thus, the instruction could not violate the principle it was designed to protect. *Id.*

The defendant also challenged the instruction on Sixth Amendment grounds, asserting that including the instruction over defense objection interfered with trial strategy. 436 U.S. at 341; 98 S.Ct. at 1095. The Court noted that in an adversary system of criminal justice, there is "no right more essential than the right to the assistance of counsel." 435 U.S. at 341, 98 S. Ct. at 1096. But the Court held that in this case there was no Sixth Amendment violation because the instruction (1) was accurate, (2) was permissible, and (3) concerned a basic constitutional principle that governs the administration of criminal justice. 435 U.S. at 341-42, 98 S. Ct. at 1096 (the Sixth Amendment does not "confer upon defense counsel the power to veto the wholly permissible actions of the trial judge").

The instant case is distinguishable in several important respects. First, the limiting instruction was not permissible – the Court of Criminal Appeals has mandated that that a limiting instruction concerning the use of extraneous offense evidence

should be given in the guilt-stage jury charge "only if the defendant requested a limiting instruction at the time the evidence was first admitted." *Delgado, supra,* at 249.

Second, the limiting instruction did not concern a basic constitutional principle, but only an evidentiary issue concerning the proper use of certain evidence. *Id.* As such, the Court of Criminal Appeals has held that the decision to forego the instruction is a strategic decision within the discretion of defense counsel.

Third, the instruction in the instant case was fundamentally different in content from the challenged instruction in *Lakeside*, which instructed the jury that it was not to consider the defendant's failure to testify for any purpose. In contrast, the instruction in the instant case permitted the jury to consider evidence of extraneous offenses for certain purposes if there was proof beyond a reasonable doubt. Assuming the jury followed the instruction, it would draw the jury's attention to the very evidence that counsel wanted to minimize. For example, Appellant admitted in his police interview (SX64) to using marijuana and that stealing marijuana was possibly the motive for the robbery. Thus, the jury was likely to find the required burden of proof met, and to find the evidence relevant for the listed permissible purposes (motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident). The instruction in the instant case actually frustrated the defense strategy, whereas the

*Lakeside* instruction did not. *See Lakeside*, 435 U.S. at 340, 98 S. Ct. at 1095 (finding it "very doubtful" that the jury would "affirmatively give weight to what they have been told not to consider at all"). Accordingly, the trial court's interference with trial strategy in this case amounted to a violation of the Sixth Amendment.

### E.    Harm Analysis

#### 1.  Constitutional Error

Because the error impinged on Appellant's constitutional rights, Texas Rule of Appellate Procedure 44.2(a) applies. TEX. R. APP. P. 44.2(a); *Snowden v. State*, 353 S.W.3d 815, 818 (Tex. Crim. App. 2011).

Rule of Appellate Procedure 44.2(a) requires reversal in constitutional error cases "unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a). The focus is not on whether the jury verdict was supported by the evidence, but rather whether the error at issue might possibly have prejudiced the jurors' decision-making. *Pollard v. State*, 255 S.W.3d 184, 190 (Tex. App.–San Antonio 2008), aff'd, 277 S.W.3d 25, 33 (Tex. Crim. App. 2009); *Langham v. State*, 305 S.W.3d 568, 582 (Tex. Crim. App. 2010). Error is not harmless "simply because the reviewing court is confident that the result the jury reached was objectively correct." *Snowden*, 353 S.W.3d at 819. Nonetheless, the presence of "overwhelming evidence of guilt is a factor to be considered." *Motilla*

*v. State*, 78 S.W.3d 352, 357 (Tex. Crim. App. 2002). Other factors to consider may include the nature of the error, whether it was emphasized by the State, the probable implications of the error, and the weight the jury would likely have assigned to it in the course of its deliberations. *Snowden*, 353 S.W.3d at 822. The Court should examine the entire record in a neutral manner, not "in the light most favorable to the verdict." *Hernandez v. State*, 80 S.W.3d 63, 65 (Tex. App.–Amarillo 2002, no pet.) (quoting *Harris v. State*, 790 S.W.2d 568, 586 (Tex. Crim. App. 1989)).

In this case there can be no finding beyond a reasonable doubt that the error did not influence the jury's decision making. Appellant's defense was that he was surprised by Enriquez's impulsive plan; he was unaware that Enriquez had a gun; he did not have the intent to commit robbery; and he only went along in order to protect his cousin (4RR19-20). The physical evidence – the presence of bandanas and duct tape in King's vehicle – suggests that the plan was not conceived spontaneously, but this evidence does not necessarily contradict Appellant's statement and King's testimony that Appellant was not a party to any planning. Instructing the jury regarding its consideration of extraneous offenses likely called the jury's attention to Appellant's admitted marijuana use. Moreover, the instruction directed the jury to consider this evidence as relevant to Appellant's motive, intent, and absence of mistake. In response to the court's sua sponte instruction, defense counsel was forced

26

to argue in closing that Appellant's marijuana use had not been proved beyond a reasonable doubt and could not be considered (4RR23). But this argument was likely rejected, because Appellant himself admitted to occasional marijuana use. The instruction also could have directed the jury's attention to evidence suggesting that Appellant had stolen the gun used in the robbery, which further undermined Appellant's defense.

For these reasons, the instruction may have influenced the jury's decision making process and contributed to Appellant's conviction; accordingly, reversal is required.

## 2. Harm Analysis under the *Almanza* Standard

Because Appellant preserved his complaint, the Court must reverse if the error resulted in any harm, regardless of degree. *Almanza*, 686 S.W.2d at 161, *Druery*, 225 S.W.3d at 504. To gauge harm, the court reviews (1) the entire jury charge; (2) the state of the evidence, including the contested issues and weight of probative evidence; (3) the argument of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *Id.* These factors require a finding of harm in this case.

As argued above, the sole contested issue was whether Appellant was merely present to look after his younger cousin, or whether he intended to participate in the robbery. The instruction likely caused the jury to focus on Appellant's admitted

27

marijuana use and to connect this evidence with the permissible purposes suggested in the instruction -- most notably, motive. The instruction thus brought the jury's attention to the very evidence that the defense wanted to minimize. Counsel's attempt to neutralize the instruction by arguing that the burden of proof was not met was likely unsuccessful. Nothing else in the jury charge served to cure the harm.

It bears noting that the numerous courts that have rejected claims of ineffective assistance of counsel by validating this strategy could not have come to that conclusion without implicitly finding that a limiting instruction, in some circumstances, is not entirely benign. *See, e.g., Delgado, supra,* at 254; *Ryan v. State*, 937 S.W.2d 93, 104 (Tex. App.-Beaumont 1996, pet. ref'd) ("[Absent anything in the record explaining counsel's reasoning], we can only conclude his trial strategy may have been not to draw further attention to the extraneous offenses"); *Curry v. State*, 861 S.W.2d 479, 484-85 (Tex. App.-Fort Worth 1993, pet. ref'd) (holding counsel not ineffective for not requesting limiting instruction during punishment, because instruction was requested when extraneous offense evidence was admitted and strategy may have been not to remind the jury of the evidence); *Agbogwe v. State*, 414 S.W.3d 820, 838 (Tex. App.-Houston [1st Dist.] 2013, no pet.) ("It is reasonable to conclude ... [that] defense counsel decided that seeking an instruction to disregard Ozoh's testimony would only bring further attention to it"); *McNeil v. State*, 452 S.W.3d 408, 415 (Tex. App.—

Houston [1st Dist.] 2014), pet. ref'd (trial counsel's choice not to request a burden-of-proof instruction and a limiting instruction about extraneous offenses was pursuant to valid strategy to avoid drawing further attention to defendant's potential extraneous offenses or misconduct); *see also* Daniel D. Blinka, *Ethics, Evidence, and the Modern Adversary Trial*, 19 Geo. J. Legal Ethics 1, 19 (2006) (noting that opponent of evidence will "frequently forego limiting instructions for fear that they will only emphasize the damaging inference").

If, as the Court of Criminal Appeals has readily acknowledged, foregoing a limiting instruction to minimize the jury's recollection of unfavorable evidence constitutes a valid strategy, *Delgado*, 235 S.W.3d at 250, then the instruction must, in some cases, be capable of causing "some harm." This is such a case, because the evidence of extraneous conduct was, in the trial court's own words "very minimal," and the jury might very well have overlooked the evidence but for the instruction. Moreover, the instruction directed the jury to consider the unfavorable evidence for certain specific purposes, such as motive, to the detriment of Appellant's defense. Accordingly, Appellant suffered some degree of harm, requiring reversal.

> **Issue Four: The trial court abused its discretion in admitting a video recording that was not authenticated pursuant to Texas Rule of Evidence 901.**

**A.    Facts**

During the punishment phase, the State offered State's Exhibit 62, a video recording of a conversation between Appellant and codefendant King captured by patrol car recording equipment shortly their arrests. Sergeant Clopton, the authenticating witness, testified that:

- most patrol vehicles are equipped with digital cameras;

- Deputy McHugh's vehicle was equipped with a camera;

- most of these cameras are activated automatically by certain triggers, such as turning on the emergency lights or sirens, or driving at a certain speed;

- the cameras can also be activated manually;

- once activated, the cameras record until "deactivated";

- when Clopton arrived at the scene, he viewed a video that was made by McHugh's patrol car camera prior to his arrival;

- State's Exhibit 62, a DVD, was a fair and accurate copy of the recording Clopton had viewed at the scene.

5RR24-27.

Appellant objected to the admission of the recording on the grounds that the State failed to demonstrate that the recording had not been tampered with or where it originated from. The defense further objected that Officer McHugh's testimony was necessary to authenticate the video because Sergeant Clopton could not establish

30

whether the recording device was working properly or if the original recording was accurate or altered. 5RR27-28. The trial court overruled the objection and admitted the exhibit. 5RR28.

The exhibit was partially published but the audio equipment malfunctioned; the equipment was subsequently fixed so that the jury could play the recording during deliberations. 5RR28-31. In closing argument, the State urged the jury to play the recording and described its most damaging contents in detail. 5RR48-50.

The video depicts the patrol car responding to the scene of the traffic stop, and then proceeding to the scene of the home invasion. Once there, the hood is raised, blocking the camera's view. During the portion of the video that contains the conversation between Appellant and King, which begins at approximately 21:52:00 of the time display, the video depicts only the raised hood of the vehicle. SX62.

## B.    Standard of Review

A trial court's evidentiary rulings regarding expert testimony are reviewed under an abuse of discretion standard. *Gallo v. State*, 239 S.W.3d 757, 765 (Tex. Crim. App. 2007); *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000) (expert testimony). A trial court abuses its discretion when its decision lies "outside the zone of reasonable disagreement." *Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007).

31

## C. The trial court abused its discretion in admitting the video recording because it was not authenticated.

Authentication is a condition precedent to admissibility that may be satisfied by "evidence sufficient to support a finding that the matter in question is what its proponent claims." TEX. R. EVID. 901(a). Rule of Evidence 901 governs the authentication requirement for the admissibility of evidence and is the appropriate analysis for the authentication of recordings. *Angleton v. State*, 971 S.W.2d 65, 69 (Tex. Crim. App. 1998).

Subsection (a) states that the authentication requirement for admissibility of evidence is satisfied by proof sufficient to support a finding that the matter in question is what its proponent claims it is. TEX. R. EVID. 901(a). Subsection (b) provides a nonexclusive list of methods to authenticate evidence. One example given is the testimony of a witness with knowledge that a matter is what it is claimed to be. TEX. R. EVID. 901(b)(1). Another method is showing "a process or system used to produce a result and showing that the process or system produces an accurate result." TEX. R. EVID. 901(b)(9).

Applying these provisions, there are at least two ways to authenticate photographic evidence including videos. *Standmire v. State*, --- S.W.3d ----, 2014 WL 3882940, at *6 (Tex. App.—Waco Aug. 7, 2014, pet. ref'd). One way is by testimony that the photo or video is an accurate representation of the object or scene in question.

*Id.; Huffman v. State*, 746 S.W.2d 212, 222 (Tex. Crim. App. 1988). In this situation, the authenticating witness is not required to be the person who operated the camera or video equipment, but must have been a witness to the contents of the recording. *Id.*

If, as in this case, the authenticating witness did not witnesses the events recorded, a video may be authenticated by testimony that the process or system that produced the photo or video is reliable. *Id.*; *Reavis v. State*, 84 S.W.3d 716, 720 (Tex. App.-Fort Worth 2002, no pet.). This method is commonly used with security videos. *Id.* For authentication of such photographic or video evidence, the authenticating witness usually (1) describes the type of system used for recording and whether it was working properly; (2) testifies whether he reviewed the video or photos; (3) testifies whether he removed the video or device that stores the photos; and (4) testifies whether the video or photos have been altered or tampered with. *Id.*; see also *Randell v. State*, No. 07–11–00493–CR, 2013 WL 309001, *2–3, 2013 Tex.App. LEXIS 742, *5–7 (Tex.App.-Amarillo Jan. 25, 2013, pet. ref'd); *Warren v. State*, No. 08–11–00029–CR, 2012 WL 651642, *1–2, 2012 Tex.App. LEXIS 1544, *3 (Tex.App.-El Paso Feb. 29, 2012, no pet.) (not designated for publication).

In the instant case, Sergeant Clopton testified that he viewed the video when he arrived at the scene of the arrest, but his testimony did not establish (1) whether the equipment was working properly; (2) how the recording device was activated; (3) how

it was deactivated; (4) what type of memory device the recording was stored on; (5) what type of equipment he used to view the recording; (6) if the recording was stored on a removable memory device, who removed the memory device; (7) whether the memory device was tampered with prior to Clopton's viewing of the recording; (8) how and by whom the recording was reproduced onto DVD. While Sergeant Clopton was generally knowledgeable about the recording equipment installed in patrol vehicles; he had no personal knowledge of the reliability of the equipment in Deputy McHugh's vehicle.

A review of cases in which video recordings were found to be properly authenticated by a witness with knowledge of the recording system indicate that Clopton's testimony falls far short in providing the necessary information about how the recording was created and reproduced.

In *Reavis v. State*, 84 S.W.3d 716 (Tex.App.-Fort Worth 2002, no pet.), the Fort Worth Court of Appeals held that a trial court did not abuse its discretion in admitting a security videotape into evidence even though the authenticating witness at trial had not personally witnessed the events depicted on the videotape. *Id.* at 720. The authenticating witness testified as follows: on the morning of the day of the offense, he loaded the videotape into 24-hour-time-lapse recorder and pressed "record;" he removed the videotape 15 minutes after the defendant was apprehended; he viewed it

with police officers; and he viewed tape again just prior to his trial testimony and what he saw was identical to what he had seen on tape on day of offense. *Id.*

In the instant case, Sergeant Clopton did not establish how the equipment was activated or deactivated; who accessed the recording; how they accessed it; what it was stored on; or how it was reproduced for trial. Moreover, Sergeant Clopton could not establish whether the recording had been tampered with prior to his arrival or whether Deputy McHugh's recording equipment was functioning properly. Clopton's basic knowledge of the sheriff department's recording equipment and his viewing of the recording are insufficient to demonstrate that the system produced an accurate recording.

In *Page v. State*, 125 S.W.3d 640 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd), a grocery store's videotape of a robbery was sufficiently authenticated to be admitted into evidence at an aggravated robbery trial, even though the store employee who testified to accuracy of tape had not witnessed events that occurred in videotape. The employee testified that the grocery store's "brand-new digital recording system" recorded images from 16 video cameras and automatically saved those images onto a computer hard drive. *Id.* at 648. The employee further testified that he accessed the digital recording system's hard drive shortly after the robbery and viewed the recording of the robbery with police officers. *Id.* The employee then copied the

35

recording of the robbery onto a videotape and gave it to the officers. *Id.* Additionally, the employee viewed the videotape before trial and testified that it had not been altered in any way. *Id.* The Court held that this evidence was sufficient to enable a reasonable juror to conclude that the videotape was "what the State claimed it to be" and that the trial court did not abuse its discretion in admitting the videotape of the robbery into evidence. *Id.* at 648-49.

In contrast, all the State established about the recording in the instant case is that the equipment may be activated in a variety of ways, and that Clopton viewed the recording once at the scene and viewed a copy of it once before trial. The State did not establish how the equipment was activated in this instance, what type of device it was stored on, who accessed the recording, how Clopton viewed it at the scene, or how and by whom it was reproduced for trial.

The Fifth Circuit has similarly required more detail regarding the creation and duplication of photographic evidence. In *United States v. Taylor*, 530 F.2d 639, 641–42 (5th Cir.), *cert. denied*, 429 U.S. 845, 97 S.Ct. 127, 50 L.Ed.2d 117 (1976), the court held that photographs were properly authenticated by government witnesses who were not present during the actual robbery but testified as to the manner in which the film was installed in the camera, how the camera was activated, the fact that the film was removed immediately after the robbery, the chain of its possession, and the fact

that it was properly developed and contact prints made from it. *Id.* at 642-43.

The deficiencies in Clopton's testimony are more critical here because the recording is essentially an audio recording. The open hood of the patrol car blocks the camera's view, so there is no picture to verify that the tape is continuous and uninterrupted, a factor courts have considered in finding a video recording authenticated. For example, in *Ballard v. State*, 23 S.W.3d 178, 180 (Tex. App.-Waco 2000, no pet.), officers fitted an undercover informant with video recording camera and activated the camera as the informant exited the officer's vehicle. *Id.* After purchasing cocaine from the defendant, the informant then met back with an officer, who turned the video recording off. *Id*. In determining that the videotaped recording was properly authenticated under Rule 901, the court noted that the recording was "continuous and uninterrupted," the officer corroborated specific events in the video recording, and the fact-finder could compare the recorded video with the physical appearance of the defendant. *Id*. at 182; *see also Watson v. State*, 421 S.W.3d 186, 192 (Tex. App.—San Antonio 2013, pet. ref'd) (video recording was authenticated where the officers had personal knowledge of the contents contained on the videotape, the tape was continuous and uninterrupted, the officers corroborated specific items in the recorded video, the fact-finder could compare the recorded video with the physical appearance of the defendant, and there was no evidence of tampering).

In the instant case, there is no video action to confirm that the recording is continuous and uninterrupted, so simply viewing the video is not sufficient to demonstrate that it is accurate and has not been altered. Thus, it was more important to establish that the recording equipment was reliable and to establish how the recording was created, accessed, and reproduced.

A number of unpublished cases also demonstrate that more detail regarding the creation and reproduction of the recording is necessary to establish the reliability of the recording system when there is no witness to the recorded events. In *Warren v. State*, No. 08–11–00029–CR, 2012 WL 651642 (Tex. App.-El Paso Feb.29, 2012, no pet.) (mem. op., not designated for publication), a burglary prosecution, the court found a security DVD to be sufficiently authenticated by testimony from a maintenance supervisor of the apartment complex, who explained how the security cameras work and testified that the he removed the SD card from the camera at issue, reviewed its contents with the complainant, and copied four images onto a DVD, which was given to the complainant. *Id.* at *2. The complainant then gave the DVD to the police. *Id.* The supervisor testified that the camera at issue was capable of making true and accurate recordings and that the DVD contained a true and accurate depiction of images taken by the camera. *Id.* He stated that he did not "alter or change the images as [he] initially saw them from the original SD card in any way." *Id.* The supervisor

38

reviewed the DVD before trial and determined that it was "a true and accurate depiction and recording of the four images that [he] saved off that SD card." *Id.* In addition, the complainant was asked whether he altered the DVD that he received from maintenance personnel, and answered, "No, it was an exact copy on a nonrewritable DVD that maintenance had given me, containing four clips." *Id.*

In *Randell v. State*, 07-11-00493-CR, 2013 WL 309001, at *2 (Tex. App.—Amarillo Jan. 25, 2013, pet. ref'd) (mem. op., not designated for publication), a security video was sufficiently authenticated by a manager's testimony that he reviewed the video after being informed of the theft; that he or the store director can "burn off" parts of the video for the police; that he did so in this case and provided the relevant part to the police; that the recording was made simultaneously with the actions recorded on the video; that he reviewed the contents of the copy prior to testifying; that it had not been tampered with; that the recording was made on a device capable of making an accurate recording; that he was trained and capable of operating the computers or devices that record images from the surveillance cameras; and that the recording offered was an accurate representation of the events "as viewed by the camera." *Id.* at *2.

In *Garcia v. State*, 05-07-00540-CR, 2008 WL 2655622, at *4 (Tex. App.—Dallas July 8, 2008, pet. ref'd) (mem. op., not designated for publication), a security

video was properly authenticated by an apartment owner's testimony that on the date of the murder he had given police a security videotape. *Id.* The videotape was recorded by a camera at his apartment complex during the hours surrounding the offense. *Id.* The owner, who had installed the camera himself, testified that the camera was working properly on the night of the offense and he had personally loaded the videotape into the camera. *Id.* He noted that the date stamp on the videotape was correct, except for the year 2008, which he had not programmed to show the correct year of 2006. *Id.* He further noted that the time stamp on the videotape was accurate "within a few minutes." *Id.* The owner further testified that he personally checks the videotapes to be sure the security cameras at the apartment complex are working. *Id.*

In *Teeter v. State*, 05-06-00309-CR, 2007 WL 510356 (Tex. App.—Dallas Feb. 20, 2007, no pet.) (mem. op., not designated for publication), a video recording made on a school bus was properly authenticated by the transportation custodial director for the school district. *Id.* at *9. The director described that each school bus has a "camera eye" or lens that is located just above and to the right of the bus driver and a video cassette recorder (VCR) in a locked box that is bolted to the floor or the underside of the dashboard. *Id.* He testified that the VCRs are inspected regularly to make certain they are operating properly, and each VCR is activated when the school bus ignition is turned on and automatically stops when the school bus ignition is turned off. *Id.* The

director retrieved the videotape from the bus, put it in his desk, and gave it to the police chief. *Id.* The director testified that he watched the videotape after he retrieved it and again before testifying, and the videotape was in the same or similar condition and there were no additions or deletions to the videotape. *Id.* Additionally, the school children's testimony described the events that occurred on the school bus, and these events appeared on the video. *Id.*

In *Brown v. State*, 14-03-01265-CR, 2005 WL 363950 (Tex. App.—Houston [14th Dist.] Feb. 17, 2005, pet. ref'd) (mem. op., not designated for publication), a store security video was properly authenticated by the manager's testimony that he came to the store, stopped the videotape, and watched five to ten minutes of the tape to see if it had captured the incident. *Id.* at *4. The manager and two other witnesses were present when the videotape was removed from the recorder in the store's surveillance room; all three witnesses testified that the outside cannister of the videotape was damaged. *Id.* The witnesses also testified that the reel of tape inside was twisted and stretched in one section but that they did not believe that the tape itself was damaged. *Id.* at *4-5. An investigator for the Harris County District Attorney's Office also testified that the outside cannister of the tape had been damaged but the tape itself had not been. *Id.* at *5. The investigator replaced the damaged canister with an undamaged canister and left the original reel of tape, then re-recorded the actual occurrence from State's Exhibit

4–A into a twenty-minute version which was admitted as State's Exhibit 6 and shown to the jury. *Id.* Both the manager and the investigator testified that the exhibit is a true and accurate representation of the original. *Id.*

As these cases demonstrate, authenticating witnesses must provide testimony demonstrating, at a minimum, how the recording was accessed and reproduced. Additionally, personal familiarity with the recording equipment is necessary to demonstrate that the equipment was capable of producing an accurate recording. Sergeant Clopton's testimony wholly failed to provide this critical information. Clopton's testimony fell far short of the detail provided in the cases discussed; accordingly, the trial court's ruling admitted the exhibit was outside the zone of reasonable disagreement.

### D. The error harmed Appellant's substantial rights.

An appellate court reviews an erroneous admission of evidence as non-constitutional error, subject to a harm analysis under rule 44.2(b) of the Texas Rules of Appellate Procedure. TEX. R. APP. P. 44.2(b). The court disregards non-constitutional error unless it affects the substantial rights of the defendant. *Id*. "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Neither the State nor the appellant has the burden to show harm when an error

has occurred; rather, after reviewing the record, it is the appellate court's duty to assess harm. *Schutz v. State*, 63 S.W.3d 442, 444 (Tex. Crim. App. 2001).

A conviction or punishment should not be overturned for such error if, after examining the entire record, there is a fair assurance that "the error did not have a substantial and injurious effect or influence in determining the jury's verdict." *Garcia v. State*, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004). But the court must reverse a conviction or punishment for non-constitutional error if it is unclear whether the result of the trial was free from substantial influence of the error. *Barshaw v. State*, 342 S.W.3d 91, 94 (Tex. Crim. App. 2011); *Burnett v. State*, 88 S.W.3d 633, 637–38 (Tex. Crim. App. 2002)).

When conducting a harm analysis, the court considers the entirety of the record, including jury instructions and closing arguments. *Motilla v. State*, 78 S.W.3d 352, 355–56 (Tex. Crim. App. 2002). In determining whether the error was harmless, the court considers the nature of the evidence supporting the verdict, the character of the alleged error, and how the error might be considered in connection with other evidence in the case. *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). Other relevant factors may include whether the State emphasized the error and whether the erroneously admitted evidence was cumulative. *Id.*

The only other evidence at punishment was documentation of Appellant's ten

prior convictions. SX66-76. The State presented evidence of a second degree felony conviction for possession of a controlled substance; three state jail felony convictions for theft of a firearm, burglary of a building, and unauthorized use of a motor vehicle; and six misdemeanor convictions. All of the offenses were committed when Appellant was a teenager, and none involved violence. Defense counsel pointed out in argument that the felony possession case involved a prescription ADHD drug. 5RR38.

While Appellant's criminal history certainly factored into the jury's decision, the video recording contained very damaging evidence that was at least equally important. In response to a relevance objection, the State pointed out that the video "shows his involvement in the planning and it shows his response after the other robber was killed and they're laughing and joking about it in the back seat of that patrol car. It goes directly to his character. It's exactly the kinds of things the jury needs to hear about." 5RR23.

The State highlighted in closing the most damaging portions and argued that they showed Appellant to be a calculating and remorseless criminal. 5RR48-49. The State pointed out that the video recorded Appellant and codefendant King conspiring to get their story straight and fabricating a story about dropping off a friend in the neighborhood. While this evidence was cumulative of King's trial testimony, several additional damaging portions were not cumulative.

For example, the State also pointed out that they discussed the incriminating evidence, namely, the duct tape and the gun Appellant had wiped and tossed. The State argued that this conversation indicated that the robbery was planned, rather than spontaneous. 5RR48-49.

The State emphasized that they discussed being "nice to the cops," and "acting like little kids." The State argued that this was the "same act that he put on when he was giving his confession," and that the jury should not fall for Appellant's polite demeanor in the confession video because it was "a game" and "a ruse." 5RR48-49.

The State also directed the jury's attention to the fact that they were laughing and joking about being on the show "Cops," which demonstrated that they were not scared or worried. The State argued that their demeanor showed a stunning lack of remorse, considering that a firearm had been discharged and they had abandoned their friend. The State urged that "[t]hese are the kinds of things that show you what kind of person he really is." 5RR48-49.

In addition to the damaging portions discussed by the State in argument, the video also captured Appellant and King using offensive language, singing, and discussing whether the complainant's wife was "hot." SX62.

In these circumstances there is no fair assurance that the error did not influence the jury's assessment of punishment. The recorded conversation discredited

Appellant's characterization of his role in the offense – that he was surprised by Enriquez's actions and did not plan or willingly participate in the robbery. As argued by the State, the recording portrayed Appellant as a calculating and remorseless criminal. This was likely given significant weight by the jury, as it bore directly on the circumstances of the offense and Appellant's character.

The punishment range was 15-99 years and the jury assessed a sentence of 20 years. CR114. While the sentence is at the low end of the range, the jury likely took account of Appellant's youth, which even the State argued was a mitigating factor (5RR53). It is at least unclear whether the error influenced the verdict; accordingly, the Court should find that the error affected Appellant's substantial rights and reverse the judgment on punishment. *Barshaw,* 342 S.W.3d at 94; *Burnett,* 88 S.W.3d at 637–38.

## PRAYER

Appellant respectfully requests that the Court reverse his conviction and remand the cause for a new trial, or alternatively, reverse the trial court's judgment as to the punishment and remand the cause to the trial court for a new trial on punishment only.

Respectfully submitted,

/s/ Adam B. Brown

**ADAM B. BROWN**
**SBOT No. 01728540**
**300 Main, Ste. 200**
**Houston, Texas 77002**
**(713) 223-0051**
**(713)  (FAX)**
**adambrownlaw@yahoo.com**

**ATTORNEY FOR APPELLANT**

## CERTIFICATE OF SERVICE

This amended document has been served on the following parties electronically through the electronic filing manager contemporaneously and in conjunction with e-filing on December 16, 2015.

Alan Curry
Assistant Harris County District Attorney
curry_alan@dao.hctx.net

/s/ Adam B. Brown

## CERTIFICATE OF COMPLIANCE

The undersigned attorney certifies that the relevant sections of this computer-generated document have 9,952 words, based on the word count function of the word processing program used to create the document. TEX. R. APP. P. 9.4 (i).

/s/ Adam B. Brown